## Lambert, Appellant, v. Security Mutual Fire Insurance Company.

*Insurance—Fire insurance—Policy—Typewritten and printed portions—Repugnancy—Chattel mortgage—Deed of trust.*

1. Where a typewritten slip is pasted on a printed policy of fire insurance, and the slip is repugnant to the printed portion of the policy, the printed form must yield to the typewritten provision.

2. Where the printed form of a fire insurance policy provides that the policy shall be void "if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage," but a typewritten slip pasted on the policy expressly provides that the insurance shall cover property held by the company in trust for others, and property sold by the company, but not delivered, and the company sets up as a defense, a deed of trust "in fee simple forever" covering real and personal property as security for a debt, the insured may show that under the laws of the state where the trust deed was executed and delivered, a trust deed was not a chattel mortgage.

*Evidence—Depositions—Signature of witness.*

3. It is not a sufficient ground for rejecting a deposition taken under a commission that it was not signed by the witness, if it appear in the body of the certificate that he was sworn.

4. The failure of a witness to sign his depositions is an irregularity which may be taken advantage of at the proper time, but it is one of those irregularities which can be waived, and which must be deemed as waiver by the unexplained failure to object as provided by the rule of court.

5. An unsigned deposition will be admitted at the trial where it appears that upon the return of the commission no exceptions had been filed to it, and it appears from the body of the deposition that the witness had been sworn by the commissioners.

Argued Oct. 8, 1914.   Appeal, No. 20, Oct. T., 1914, by plaintiffs, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1909, No. 4,097, on verdict for defendant in case of W. W. Lambert, Trustee in Bankruptcy of Bradley Furniture Manufacturing Company, v. Security Mutual Fire Insurance Company of Chatfield.   Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ.   Reversed.

Assumption on a policy of fire insurance.

At the trial it appeared that the contract provided that the policy should be void if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage. A type-written slip pasted on the face of the policy was as follows:

"(Typewritten) On their stock of merchandise consisting principally of furniture, manufactured, unmanufactured and in the process of manufacture, and other merchandise not more hazardous, the property of the assured or held in trust for others or on commission or sold but not delivered or for which the assured may be held legally liable all while contained in their Ware Room, used for storage or other purposes, situated on their property in Elizabethton, Cater County, Tenn."

The deposition of Lee F. Miller, a lawyer of Tennessee, was offered for the purpose of showing that a deed of trust "in fee simple forever" on the real and personal estate of the insured to secure a debt, was not a chattel mortgage, under the Tennessee laws. The deposition began and concluded as follows:

"Lee F. Miller of Elizabethton, Tennessee, in Carter County, and by occupation a lawyer, aged twenty-one years and upwards, being duly sworn and examined on the part of the plaintiff, doth depose and say as follows: ". . . . Examination taken, reduced to writing, and by the witness subscribed and sworn to, September 13, 1913.

"(Sgd.) W. M. Vaught,<br>"(Sgd.) Thad. O. Cox,<br>"Commissioners."

(Each page of the deposition is signed W. M. Vaught, Thad. O. Cox, Commissioners.)

The deposition was not signed by the deponent.

The court charged as follows:

[Now there is no question whatever that this condition has been violated by the plaintiff. A deed of trust

was given by the plaintiff, or rather by the company, whose trustee in bankruptcy the plaintiff is, for the purpose of securing the payment of certain outstanding notes and indemnifying certain indorsers against the consequences of having indorsed the company's paper. This policy, it appears, was given on the very day that the deed of trust was executed. It seems to me that there is no escaping from giving full force and effect to the condition to which I have referred. That condition has been broken. The consequence of its breach is that the policy is invalidated, and cannot be made to serve as the basis of a recovery against the insurance company. You must therefore render your verdict in favor of the defendant.] [2]

Verdict and judgment for defendant, plaintiff appealed.

Errors assigned were (2) the charge of the court, and (3) the rejection of the deposition of Mr. Miller.

Benjamin O. Frick, with him John G. Johnson, for appellant.—The typewritten clause, attached to the policy, insuring property "held in trust for others," "or for which the assured may be held legally liable," superseded the printed clause against chattel mortgage: Franklin F. Ins. Co. v. Brock, 57 Pa. 74; Grandin v. Rochester, etc., Ins. Co., 107 Pa. 26; Duffield v. Hue, 129 Pa. 94; Haws v. St. Paul F. & M. Ins. Co., 130 Pa. 13; West Branch Lumbermen's Exchange v. American Central Ins. Co., 183 Pa. 366; Com. Title Ins. & Trust Co. v. Ellis, 192 Pa. 321; Humphreys v. National Benefit Assn., 139 Pa. 264; Bingell v. Royal Ins. Co., 240 Pa. 412; Frick v. United Firemen's Ins. Co., 218 Pa. 409; Yost v. Anchor Fire Ins. Co., 38 Pa. Superior Ct. 594.

It has been uniformly held by the courts that the words "held in trust," are to be given not the technical meaning, but a liberal construction to mean any goods in the possession of the insured: Siter v. Morrs, 13 Pa.

218; West Branch Lumbermen's Exchange v. American Central Ins. Co., 183 Pa. 366; Roberts v. Firemen's Ins. Co., 165 Pa. 55.

Miller's deposition, though unsigned, was admissible.

The trust deed is not a chattel mortgage within the terms of the policy.

*Thomas O. Peirce,* for appellee.—The typewritten clause or "form" of the policy did not supersede or affect the printed provision making the policy void if the subject of insurance be personal property and be or become incumbered by a chattel mortgage: First Nat. Bank v. American Central Ins. Co., 58 Minn. 492.

The prohibition against the incumbering of the property is a reasonable, legal and proper one: Fries-Breslin v. Star F. Ins. Co., 154 Fed. Repr. 35; Syndicate Ins. Co. v. Bohn, 65 Fed. Repr. 165.

The existence of a mortgage binding upon the insured personal property without the written consent of the insuring company annuls the policy: Gilchrist Transp. Co. v. Phenix Ins. Co., 170 Fed. Repr. 279; Fries-Breslin v. Star Ins. Co., 154 Fed. Repr. 35; Atlas Reduction Co. v. New Zealand Ins. Co., 138 Fed. Repr. 497.

Miller's unsigned deposition was not admissible: Zehner v. Lehigh Coal & Nav. Co., 187 Pa. 487.

The deed of trust offered in evidence is a chattel mortgage within the terms of the policy.

OPINION BY RICE, P. J., February 24, 1915:

This was an action of assumpsit on a fire insurance policy issued to Bradley Furniture Manufacturing Company. In a typewritten slip pasted on the printed policy the subject of insurance was thus described: "On their stock of merchandise consisting principally of furniture, manufactured, unmanufactured and in the process of manufacture, and other merchandise not more hazardous, the property of the assured or held in trust for others or on commission or sold but not de-

livered or for which the assured may be held legally liable all while contained in their Ware Room, used for storage and other purposes, situate on their property in Elizabethton, Cater County, Tenn." In the printed part of the policy was a clause which, so far as material here, we quote: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void .... if the interest of the insured be other than unconditional and sole ownership; .... or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage."

On the day the policy was issued the insured executed and delivered to James D. Jenkins a deed conveying to him "in trust in fee simple forever" certain real estate, together with everything constituting its furniture manufacturing plant, and also all furniture on consignment in its warehouse, and "all furniture, lumber, stock, supplies of all kinds and everything said company has, or which they may hereafter acquire." As shown by other clauses, the deed was given to secure certain named persons on account of their indorsement of certain notes the company had given, and to secure another named person for such amount as he should become liable for as indorser of notes the company expected to give in the future. The instrument provided, that, if the company should pay or cause to be paid these notes, and any renewals thereof, with accrued interest, then the deed of trust should be null and void; but if the company should fail to pay, and by reason of such failure any of these indorsers or their estates were ever called upon to pay any part of the notes, renewals, or interest, then the trustee, after first advertising according to the law of Tennessee, should expose the property to public sale at the courthouse door "in bar of all equity of redemption to the highest bidder." The instrument further provided, that, after payment of expenses of sale, commissions, and indebtedness out of the proceeds of such sale, the surplus, if

any, should be paid to the Bradley Furniture Manufacturing Company, its successors or assigns.

The learned trial judge charged the jury that the giving of this deed was a violation of the condition of the policy against incumbering the property by chattel mortgage; in consequence the policy was invalidated and could not serve as the basis of recovery against the insurance company, and therefore their verdict must be for the defendant. Appellant's counsel base their objection to this instruction upon these general grounds: first, the printed condition relative to chattel mortgage is repugnant. to, and was superseded by, the typewritten clause above quoted; second, the trust deed is not a chattel mortgage, within the terms of the policy. In Grandin v. Rochester German Ins. Co., 107 Pa. 26, it was declared to be the settled rule "that where the written and printed portions are repugnant to each other, the printed form must yield to the deliberate written expression." Many other authorities recognizing the same principle are cited in the appellee's brief. This rule is a very important one to be observed in the construction of insurance contracts, where otherwise the presumed intention of both parties, that the policy should provide indemnity, would be wholly defeated. It is quite clear, therefore, that the general printed condition as to sole and unconditional ownership must be construed as not applying to the personal property referred to and described in the typewritten slip. Notwithstanding this condition, the policy must be construed as providing indemnity against loss or damage, by fire, of personal property while contained in the company's warehouse, of which the company was not the sole and unconditional owner, namely:

(a) Property held by the company in trust for others;

(b) Property held by the company on commission;

(c) Property sold by the company but not delivered;

(d) Property for which the company might be held legally liable.

But, while under these general terms, in the absence of anything qualifying them, property on which the insured had given or should thereafter give a chattel mortgage would be included, it is not necessary to include them in order to give full effect to the instrument construed as a whole. The rule of construction which attaches more relative importance to the written than to the printed part of a contract, is founded on sound reason and is supported by abundant authority. But neither that rule, nor the rule that a man's grant is to be taken most strongly against himself, nor the rule that a policy of insurance should be construed most strongly against the insurer, relieves the court from reconciling the different parts of the contract, if it can reasonably be done. "And, where the interpretation and effect of the written portion are themselves in question, the other portions of the contract, although printed, cannot be disregarded:" Lane v. Nelson, 167 Pa. 602. It is not often possible for parties to express their entire intent and purpose in a single sentence or in a single paragraph. There is no general rule of law or of reason, that a clause of a contract excepting something out of the operation of a previous clause must be rejected for repugnancy. Nothing is more common than for parties to qualify their general words in that way. As already intimated, it is not to be presumed, but rather the contrary, that the parties to this contract supposed there was "coiled up" in the printed part a condition that rendered the policy nugatory from the beginning. It is, however, entirely reasonable to presume that, having used general words that were susceptible of being construed to include, amongst other property, property upon which the insured had or might thereafter put a chattel mortgage, they should qualify these general words by an express agreement, covenant, or condition that the insured should not do that specific thing. Giving effect to that condition does not defeat the purpose and intent of the parties as to the indemnity, but merely confines the

indemnity contracted for within the limits the policy, considered as a whole, shows the parties intended it to have. As was said in First Nat. Bank v. Am. Central Ins. Co., 58 Minn. 492, where the construction of similar provisions of a policy of insurance was involved: "There may be, and often is, a moral hazard in carrying an insurance risk on property covered by a chattel mortgage which would not exist as to property sold absolutely, but left in the vendor's possession. We are not unmindful that 'held in trust,' when used in an insurance policy in this manner, does not signify a technical trust, but has a broad meaning, and will include property in the custody of a bailee or mere agent. Neither are we unmindful of the rule that a condition of this character, working a forfeiture, should be strictly construed. We are still forced to the conclusion that the difference between a chattel mortgage and an absolute sale, as affecting an insurance risk, is too substantial for us to hold that, where both are prohibited in the printed part of the policy, permission in the written part of the policy to make the latter includes permission to make the former." We conclude, without further elaboration, that the printed condition prohibiting the incumbering of the property by a chattel mortgage was not superseded or rendered nugatory by the typewritten clause of the contract.

But in view of the broad terms of the typewritten clause, as well of the general principles which according to all the decisions are to be applied in the construction of insurance policies, the condition must be strictly construed; that is, it is not to be extended beyond the very thing provided against, even though the thing done be similar in very many respects to the giving of a chattel mortgage. The plaintiff contends, and by the testimony of a lawyer of the state of Tennessee, where the trust deed was executed and delivered, where the property covered by it was situated, and where the deed was to take effect, offered to show, that, by the

law of that state, the trust deed is not a chattel mortgage. We are of opinion it was competent for the plaintiff to prove this if he could. It becomes necessary, therefore, to determine whether the deposition of Lee F. Miller was properly rejected.

The return to the commission issued to the state of Tennessee, under which his testimony in answer to interrogatories and cross-interrogatories was taken, set forth in its caption that he was duly sworn and examined. Each page of the deposition was signed by the commissioners, and at the end was the following certificate, which was signed by them: "Examination taken, reduced to writing, and by the witness subscribed and sworn to, this 13th day of September, 1913." It is not claimed that the provisions of the rule of the courts of common pleas of Philadelphia county (No. 116), as to the duties of the prothonotary in opening and filing and giving notice thereof to the parties, were not complied with. The sole ground upon which the deposition was rejected was that it was not signed by the witness. This objection was raised for the first time at the trial. But it was distinctly and unequivocally decided in Moulson v. Hargrave, 1 S. & R. 201, that it is not a sufficient ground for rejecting a deposition taken under a commission, that it was not signed by the witness if it appear in the body of the certificate he was sworn. This, it was stated by the court, was in accordance with its previous decisions and decisions of the circuit court of the United States for the district. The case was cited and the ruling quoted with approval in the later case of Morss v. Palmer, 15 Pa. 51, and it is referred to as authority in many books of practice. We cannot find that it has been questioned by court or counsel in any later Pennsylvania case applying to depositions taken under special commission and interrogatories as this was. True, in Zehner v. Lehigh Coal & Nav. Co., 187 Pa. 487, the court rejected ex parte depositions taken before a notary public, and, upon appeal to the Supreme

Court, this ruling was affirmed. But in the opinion of the Supreme Court no mention was made of Moulson v. Hargrave, although it was cited by counsel, and it is reasonably clear that the decision was based, not on the mere fact that the depositions had not been signed, but upon all the facts which are recited, taken as a connected whole. This, we think, is shown by the following excerpt from the opinion of Chief Justice STERRETT: "In the manifestly defective form in which the depositions were presented the learned court was clearly right in rejecting them. It ought to be obvious to anyone that depositions taken by a stenographer in shorthand must be fully written out in longhand, read by or to the witness, assented to and signed by him. These requirements or their full equivalents are essential and cannot be dispensed with. The so-called depositions offered in this case were wanting in nearly all of these essential particulars. Such a practice is exceedingly vicious and dangerous, and cannot be too severely condemned. It is true the depositions, so called, were written out in longhand, but until they were scrutinized and assented to by the witnesses there could be no assurance that they were correct." It is thus seen that the facts of that case materially differed from the facts here; so that the case can scarcely be regarded as overruling Moulson v. Hargrave. Granting, however, that, though the execution of the commission be in every other respect regular, the failure of a witness to sign his deposition is an irregularity which may be taken advantage of at the proper time, it is one of those irregularities which can be waived, and which must be deemed as waived by the unexplained failure to object as provided by the rule of court. See Oterie v. Vitale, 55 Pa. Superior Ct. 492. Upon consideration of the question from every point of view, our conclusion is, that the deposition should have been admitted subject to the right of the defendant to object to such parts of it as were irrelevant to the issue.

Judgment reversed and venire facias de novo awarded.