Newman et al. *v.* Massachusetts Bonding & Insurance Company, Appellant.

Argued April 16, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*James J. Burns, Jr.,* for appellant.

*Abraham Pervin,* for appellees.

OPINION BY HIRT, J., July 27, 1948:

Plaintiffs are commercial photographers. For a number of years they have occupied the entire eighth floor of a building on Penn Avenue, in Pittsburgh. They become liable to the tenant of the floor below for water

damage to his property and settled the claim by payment of $900. This action was brought by them to recoup their loss, upon a policy of indemnity insurance issued by defendant company. At the close of defendant's case it was conceded by both parties that the controlling issue involved a construction of the insurance contract and raised a question wholly of law. Accordingly, each moved for a directed verdict. Plaintiffs' point for binding instructions was affirmed by the trial judge and judgment was entered on the verdict in their favor in the sum of $900 with interest. Defendant in this appeal contends that it is entitled to judgment n. o. v.

The so-called "Schedule Liability" insurance contract was originally entered into by plaintiffs with the defendant in 1941 and has been renewed from year to year in its present form. It covers both personal injury and property damage liability of plaintiffs in the conduct of their business as commercial photographers in their present location.

Plaintiffs had installed a large sink against a wall on the premises, with adequate drainage into the city sewer. A faucet connected with the water system of the building extended over the sink from the wall. In one end of the sink plaintiffs had set up a small tank for washing negatives. The operation involved a flow of water through the tank. To accomplish this, a rubber hose of small diameter was attached to the faucet and was connected with an intake opening in the bottom of the tank. In normal operation there was a continuous flow of water from the faucet through the hose into the tank, which, overflowing into the sink, was discharged into the waste pipes of the building. On the night of August 17, 1944 the faucet, with the hose attached to it, was left turned on to wash negatives in the tank. There was no one in attendance. During the night the hose became partly disconnected from the faucet. As a result, water squirted through the opening under pressure and, striking the wall back of the sink, ran

down to the floor below, damaging property of Rapid Spring Company. Defendant authorized the plaintiffs to settle the claim of the Spring Company for $900, reserving the right to have the question of its liability to plaintiff, under the insurance contract, determined by the present suit.

Subject to stated exclusions and other terms and conditions of the policy the defendant agreed, as to "Coverage B—Property Damage Liability", as follows: "To pay on behalf of the Assured all sums which the Assured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, 'caused by accident and arising out of the hazards hereinafter defined." Among the "Definition of Hazards" in the policy, this appears: "Division 1. Premises—Operations. The ownership, *maintenance or use of the premises, and all operations* during the Policy Period *which are necessary or incidental thereto.*" Washing of negatives is an almost continuous operation in plaintiffs' business. But defendant contends that it is specifically relieved from liability in the present case by paragraph *h* of the printed Exclusions, appearing in the policy following the Definitions of Hazards, which provides: *"This policy does not apply;* (h) under Coverage B, with respect to division 1 of the Definition of Hazards, [quoted above] *to injury* to or destruction of buildings or contents thereof *caused by the discharge, leakage or overflow of water . . . from plumbing, . . .* water storage tanks connected with plumbing or automatic sprinkler systems . . . *or industrial* or domestic *appliances, . . .* in so far as any of these occur on or from premises owned or rented by the named Assured, *unless specifically declared and described in this Policy and premium charged therefore.'*

Under the heading of "Coverage Analysis"—the only logical place in the policy for a specific declaration of the assumption of the risk of water damage—this ap-

pears: "Premises—Operations #2473—Photographers — Commercial — *all operations* — including studios (aerial Photography or the Production of Motion Pictures to be separately rated.)" Opposite this recital, the premium bases and premium rates applicable to the entire coverage for both bodily injury and property damage liability, appear. The above coverage analysis is typewritten and will prevail against printed provisions of the policy if inconsistent with them. Washing negatives is included in the general language of the Definition of Hazards and the Analysis of Coverage as stated by the insurer. (All emphasis added.)

The court below adopted the argument of plaintiffs that the above quoted statement under Coverage Analysis, created an ambiguity in the policy which when construed against the insurer and in favor of the insured— as an ambiguity must be—required a finding in their favor. Appellees repeat the argument here. They concede that they are not entitled to recover under the Definition of Hazards of the policy because of the limitation of liability by Exclusion *h* of the policy. But they contend that the restatement of the subject of the insurance under Coverage Analysis in the general language of "all operations" without reference to any exception or exclusion, accompanied by a statement of the premium bases and rates, raises an implication in their favor, to which they are entitled, that the insurer assumed liability for all operational risks of plaintiffs' business including water damage.

The method of this policy in stating the risks assumed is in common use in standard form insurance contracts. Insurance policies usually state the coverage in broad and general terms as the obligation of the insurer, unless and except as, later limited by stated conditions or exclusions. This is a logical procedure in the interest of clarity of expression, and is necessary from a practical viewpoint. It would be difficult to state what a policy does *not* cover until after the general positive intention

of the parties has been expressed. Certainly an insurer may limit its general liability in a policy by an exclusion of stated risks. The effect of such exclusion clause is to remove from the coverage certain losses which would establish liability under the general coverage except for their exclusion. Cf. *Commercial Stand. Ins. Co. v. Gilmore, Gardner & Kirk Oil Co.,* 157 F. 2d 929. And where the language of an insurance policy, including the exclusion clauses, is clear and unambiguous it cannot be construed to mean other than what it says. *Hagarty v. Wm. Akers, Jr., Co., Inc., et al.,* 342 Pa. 236, 20 A. 2d 317; *Serv. Trucking Co., Inc., et al., v. Amer. Cas. Co.,* 160 Pa. Superior Ct. 331, 51 A. 2d 397; *Holliday v. St. Paul Mercury Indm. Co.,* 153 Pa. Superior Ct. 59, 33 A. 2d 449; *Speca et al., v. Bucci Const. Co., Inc., et al.,* 139 Pa. Superior Ct. 76, 11 A. 2d 560.

Here the exclusion of liability for water damage from leaking plumbing or industrial appliances applies by specific reference in paragraph *h* to property damage from operations incidental to the use of the premises under Coverage B, Division 1 of the Definition of Hazards in the policy. Division 1, in the formal printed part of the policy, refers to the use of the premises by insured and all operations which are necessary and incidental thereto without any designation by description or otherwise of the kind of business to which the insurance is applicable. The "Purpose of Use" as stated in the policy under "Coverage Analysis", in the language quoted above, supplies the deficiency. This typewritten statement is an amplification of the language of Division 1 describing plaintiffs' business specifically though still in general terms. The two paragraphs must be read together and Exclusion *h* must be construed as limiting the phrase "all operations" in each of them.

As an afterthought plaintiffs must have been impressed with the importance of indemnity insurance against liability for water damage. But Exclusion *h* clearly states that the policy does not cover that risk

unless "specifically declared and described in this Policy and premium charged therefor." Nowhere in the policy is there a declaration, specific or otherwise, of the assumption of liability for water damage nor any language from which it may be inferred that a premium for that risk is included in the total premium indicated for the coverage of the policy. On the contrary it is clear that the premium charged is based on the operational risks of plaintiffs' business as reduced by Exclusion *h* and as so limited the insurance did not cover the water damage in this case.

Judgment reversed and here entered for defendant n. o. v.

Judge DITHRICH would affirm on the opinion of Judge MCNAUGHER.