## Newman et al., Appellants, *v.* Massachusetts Bonding and Insurance Company.

Argued March 21, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Abraham Pervin,* for appellants.

*James J. Burns, Jr.,* for appellee.

OPINION BY MR. JUSTICE LINN, April 11, 1949:

This appeal is from the judgment of the Superior Court reversing a judgment for the plaintiffs entered by the common pleas of Allegheny County in an action on a policy of insurance issued by defendant. The policy is written on a form entitled, "Manufacturers' and Contractors' Schedule Liability Policy." Certain blanks in the policy form are filled by typewritten provisions. Plaintiffs contend that their loss is covered by a typewritten provision insuring against that loss; defendant contends that the typewritten provision relied on by the plaintiffs must be subordinated to a printed portion of the policy which otherwise would except liability for the damage that occurred. The common pleas construed the policy in accord with plaintiffs' contention and rejected defendant's construction on the ground that it created an ambiguity which must be resolved against the defendant-insurer. The Superior Court (DITHRICH, J., dissenting) was of opinion that liability for the particular damage sustained was excepted from the

policy: 163 Pa. Superior Ct. 179, 60 A. 2d 347 (1948). We granted plaintiffs' application for leave to appeal.

The policy begins by a heading "Declarations." Item 1 under that heading, contains a number of blanks. In typewriting, opposite the printed words, "The business of the named Assured is" are the words "Commercial Photographers." Item 1 also specified that the insured carried on its operations on the "entire eighth floor" of a building at 713 Penn Avenue, Pittsburgh, under the title Newman-Schmidt Studios. Item 3 is headed "Hazards" and contains blank spaces for insertions to provide for six different classes of hazards [1] and also relating them to "Coverage A and Coverage B" with blanks for the applicable premiums. The only class of hazard specified in typewriting, with the premium blanks filled in, and therefore the only coverage provided by the policy, was the printed one entitled "Premises and Operations."

Item 4 entitled Coverage Analysis contained blanks for insertions for any or all of the six classes of hazards. As the policy in suit was limited to the first class, that is Premises and Operations, the blank provided for that heading contained the following typewriting: "No. 2473 —Photographers—Commercial—all operations—including studios (Aerial Photography or the Production of Motion Pictures to be separately rated." Opposite that entry were specified in typewriting the premium bases and premium rates.

Plaintiffs' photographic operations required washing of negatives for which continuously running water was necessary; an appropriate tank and water supply was part of plaintiffs' plant; such washing of negatives was an essential part of plaintiffs' operations and was necessarily included in the term "all operations" as applied

---

[1] Premises and Operations, Elevators, Products, Teams, Contractual and Independent Contractors.

to plaintiffs' business in the blank in Item 4. During the night of August 17, 1944, the hose attached to a faucet supplying this water became partly disconnected[2] resulting in an overflow of water which passed to the floor below plaintiffs and damaged the property of the seventh floor tenant. The parties agreed on the amount of the damage which, with defendant's consent, was paid by the plaintiffs without prejudice to their right to sue on the policy. This suit is for that amount.

The next or second page of the policy is headed Insuring Agreements and, under paragraph 1, provided for Coverage A and Coverage B, one covering "bodily injury liability" and the other "property damage liability." By the Insuring Agreement, Coverage B—Property Damage Liability, defendant agreed "To pay on behalf of the Assured all sums which the Assured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss or use thereof, caused by accident and arising out of the the hazards hereinafter defined."

Under the heading Definition of Hazards appears the following: "Division 1. Premises—Operations. The ownership, maintenance or use of the premises, and all operations during the Policy Period which are necessary or incidental thereto." The next general heading on the second page is Exclusions, which specify that "This Policy does not apply . . . (h) under Coverage B, with respect to division 1 of the Definition of Hazards, to injury to or destruction of buildings or contents thereof caused by the discharge, leakage or overflow of water or steam from plumbing, heating, refrigerating, air conditioning or automatic sprinkler systems (including any other substance from automatic sprinkler systems), water storage tanks connected with plumbing or automatic sprinkler systems, elevator tanks and cylinders,

[2] What happened is set forth in the opinion of the Superior Court.

standpipes for fire hose, or industrial or domestic appliances, the collapse or fall of tanks or the component parts or supports thereof which form a part of automatic sprinkler systems and rain or snow admitted directly to interiors of buildings through defective roofs, leaders or spouting, or by open or defective doors, windows, sky-lights, transoms or ventilators, in so far as any of these occur on or from premises owned or rented by the named Assured, unless specifically declared and described in this Policy and premium charged therefor; . . ." The differences between the parties depend on the effect of the typewritten portion of the policy on those two printed portions. Subsection (h) modifies the definition of Hazards just quoted by reducing the coverage; both are part of the printed policy form which, however, did not constitute the contract of the parties until the appropriate blanks had been filled in to express the intention agreed to. Considered by themselves, the exclusion (h) is inconsistent with the definition of Hazards quoted above, reducing the meaning of the words "all operations" so that they would not include the water damage described in sub-paragraph (h). But the two provisions cannot be considered by themselves because that was not the intention of the parties; and to evidence that intention they provided in their Coverage Analysis that the coverage was on "Photographers — Commercial — all operations including studios . . ." opposite which they also specified the premium bases and the premium rates. The Coverage Analysis recited the business of the assured (commercial photographers) and provided that the coverage was on "all operations—including studios." The court must give effect to every word that can be given effect. By the familiar rule applicable in such circumstances, that typewritten provision, which is the parties last expression of their intention, must be given effect to the exclusion of the printed portions in Ex-

clusion (h) : cf. *Morris v. American Liability & Surety Co.*, 322 Pa. 91, 95, 185 A. 201 (1936) ; see also *McClure v. Mutual Fire Ins. Co.*, 242 Pa. 59, 88 A. 921, 48 L. R. A. (N. S.) 1221 (1913) ; *West Branch Lumberman's Exchange v. American Central Ins. Co.*, 183 Pa. 366, 36 A. 1081 (1898) ; *Lambert v. Security Mutual Fire Ins. Co.*, 58 Pa. Superior Ct. 624 (1915).

Judge McNAUGHER in the opinion written for the court of common pleas very appropriately said, "The defendant is chargeable with knowledge of the 'operations' in the plaintiffs' business. It may not be heard to say that it did not know the method employed in the washing of negatives and the use of flowing water for that purpose. See Western & A. Pipe Lines v. Home Insurance Co., 145 Pa. 346, 22 A. 665 (1891) ; and Lewis v. Fidelity Casualty Co., 304 Pa. 503, 156 A. 73 (1931)."

Concerning the effect of Exclusion (h) the opinion of the Superior Court says, "But Exclusion *h* clearly states that the policy does not cover that risk unless 'specifically declared and described in this Policy and premium charged therefor.' Nowhere in the policy is there a declaration, specific or otherwise, of the assumption of liability for water damage nor any language from which it may be inferred that a premium for that risk is included in the total premium indicated for the coverage of the policy. On the contrary it is clear that the premium charged is based on the operational risks of plaintiffs' business as reduced by Exclusion *h* and as so limited the insurance did not cover the water damage in this case."

We must reject that analysis because the typewritten Coverage Analysis distinctly includes "all operations— including studios;" and contains opposite them, as we have said, the premium bases and the premium rates duly stated in typewriting. We think the assumption of liability for water damage resulting from commercial operations is directly within the insuring agreement and

the Coverage Analysis covering all operations, including studios.

Judgment of the Superior Court is reversed and the judgment of the common pleas is reinstated as of the date on which it was entered.

---

DISSENTING OPINION BY MR. JUSTICE HORACE STERN:

I would affirm the judgment of the Superior Court in this case on the opinion of Judge HIRT, 163 Pa. Superior Ct. 179, 60 A. 2d 347.