**Piper Aircraft Corporation, Plaintiff *v.* Insurance Company of North America and Commonwealth of Pennsylvania, Department of Transportation, Defendants.**

Argued December 13, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS and MACPHAIL, sitting as a panel of three.

*F. Hastings Griffin, Jr.,* with him *Alfred A. Gollatz* and *Richard A. Deak, Dechert, Price & Rhoads,* for plaintiff.

*J. Grant McCabe, III,* with him *Thomas P. Wagner, Rawle & Henderson,* for Defendant, Insurance Company of North America.

*George D. Wenick,* Assistant Attorney General, for respondent, Department of Transportation.

OPINION BY JUDGE ROGERS, December 29, 1982:

Before us in this declaratory judgment action are the parties' cross motions for summary judgment. The single issue presented is whether, by the issuance of a policy of aviation insurance to DOT in 1976 and the execution in 1977 of an endorsement to that policy naming Piper Aircraft Corporation (Piper) as an additional insured, the Insurance Company of North

America (INA) contracted to conduct Piper's defense in nine wrongful death actions now pending and arising out of the crash on February 24, 1977 of a Piper Cheyenne aircraft then leased by Piper to DOT and made the subject of the policy endorsement. The parties each allege that no material facts are in dispute and each agrees that the issue posed may be resolved with reference alone to the language of the contract of insurance.

The endorsement, effective as of February 1, 1977, and designated Number 12 is, in its entirety, as follows:

> It is understood and agreed that such insurance as is provided by this policy with respect to Coverage C, G, and I is extended to Piper Aircraft Corporation as an additional insured, but only as respects their interest as owner/lessor of Piper Cheyenne N-631 Pt.

> It is further agreed that endorsement No. 7 shall apply with respect to Piper Cheyenne N-631 Pt.

Coverage G, referred to in the endorsement, commits INA, with certain exceptions, exclusions, and conditions not here asserted to be applicable

> To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages:

> (1) including damages for care and loss of services, because of bodily injury, sickness, disease and, if arising out of the foregoing, mental anguish, including death at any time resulting therefrom, sustained by any person caused by an occurrence [defined elsewhere in the policy as an accident] during the policy period and arising out of:

(a) the ownership, maintenance or use of the aircraft as described in this policy;

. . . .

The Company shall have the right and duty to defend any suit against the insured seeking damages on account of bodily injury or property damage. . . .

Piper argues that these provisions, properly construed, end the matter; that the endorsement provides Piper with the coverages enumerated in schedule G and schedule G entitles to any insured to which it is applicable a defense in suits for damages sustained as a result of the crash of the designated aircraft.

INA erects two arguments which it says require a different interpretation. First, INA refers to the definitional section of the policy which specifies the meaning of the term "insured" as follows:

The unqualified word "insured" wherever used in the policy with respect to Coverage D, E, F and G includes not only the Named Insured but also any person while using or riding in the aircraft and any person or organization legally responsible for its use, provided the actual use is by or with the permission of the Named Insured. The insurance with respect to any person or organization other than the Named Insured does not apply to:

. . . .

(b) any person or organization, or any agent or employee thereof, other than agents or employees of the Named Insured, engaged in the manufacture or sale of aircraft, aircraft engines or aircraft accessories . . . with respect to any occurrence or accident arising out of the manufacture or operation thereof.

This definitional provision is, we are told, not unusual in liability policies, is called the "omnibus clause," and functions in the usual case to describe the circumstances under which and the extent to which an individual not a party to the contract of insurance and not otherwise identified in that instrument will nevertheless be eligible for the benefits and coverages described therein.

INA contends that it has not contracted to defend Piper under these circumstances because the liability of aircraft manufacturers for accidents arising out of that manufacture is expressly excluded from coverage in the omnibus clause by subsection (b) set forth above and because endorsement Number 12 designates Piper as an "additional insured" and not as a "Named Insured" (a designation applicable, in INA's view, only to DOT), and because the gravamen of the tort actions now pending against Piper are that Piper's design and manufacture of the aircraft were negligent and in breach of express and implied warranties of fitness and were such as to ground strict products liability within the meaning of Section 402A of the Restatement (Second) of Torts.

In sum, INA contends that although endorsement 12 ostensibly extends to Piper "such insurance as is provided by this policy with respect to Coverage C, G, and I," in fact the coverage described in schedule G is available to Piper only to the extent authorized by the definitional omnibus clause. Such a reading, however, so greatly limits the effect of endorsement 12 as to violate the cardinal rule of construction requiring that all of the provisions of the policy be given some operational meaning.[1] That is, a reading of the whole

---

[1] The interpretation of policies of insurance, inasmuch as such policies are contracts, is governed by the principles applicable to the interpretation of contracts generally. *Mohn v. American Casualty*

of the policy so as to limit the schedule G coverage available to Piper to that which would have been available in any event under the omnibus provision would frustrate the parties' presumptive intention to work

Co., 458 Pa. 576, 326 A.2d 346 (1974). These principles include the requirement that the intention of the parties be determined from the words of the instrument, *Mohn; Burne v. Franklin Life Insurance Co.*, 451 Pa. 218, 301 A.2d 799 (1973), that the contract of insurance must be read in its entirety, giving its unambiguous terms their plain and ordinary meaning, *Pennsylvania Manufacturers Association Insurance Co. v. Aetna Casualty and Surety Insurance Co.*, 426 Pa. 453, 233 A.2d 548 (1967) ; *Treasure Craft Jewelers, Inc. v. Jefferson Insurance Co. of N.Y.*, 583 F.2d 650 (3rd Cir. 1978), that, if possible, every word of the policy be given effect. *Newman v. Massachusetts Bonding & Insurance Co.*, 361 Pa. 587, 65 A.2d 417 (1949), and that remaining ambiguities in the integrated agreement be resolved by a construction which disfavors the draftsman who created the ambiguity, *Mohn; Penn-Air, Inc. v. Indemnity Insurance Co. of North America*, 439 Pa. 511, 269 A.2d 19 (1970) ; *Great American Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 412 Pa. 538, 194 A.2d 903 (1963) ; *Western Insurance Co. v. Cropper*, 32 Pa. 351 (1859).

INA argues at some length that other rules of construction, peculiar to the interpretation of insurance contracts and including the rule of liberal construction in favor of the insured, the presumption in favor of indemnification, and the refusal to give effect to policy exclusions not explained to or understood by the insured, have no application in the instant case where the parties to the contract stood on comparatively equal footing. We need not decide this question since the rules at issue are called into play only if the language of the policy is ambiguous. As we discuss, there is no ambiguity in the policy provisions here at issue.

INA also attaches as an appendix to its brief in this Court an affidavit containing the account of INA's underwriter as to the oral negotiations and agreements which culminated in the insurance policy here at issue. Again, the integrated policy is unambiguous and we may not resort to this parol evidence.

Finally, both parties make reference to certain extrinsic evidence assertedly relevant to the interpretation of the policy including the aircraft lease between Piper and DOT. We have examined this evidence with great care as part of the circumstantial context but the clear language of the policy must prevail.

some operative change in the policy by the addition of endorsement 12.

Apparently recognizing this difficulty with its proffered construction, INA describes in its written argument before this Court certain benefits described in schedules C and I which are available to Piper as a consequence of endorsement 12. However, endorsement 12 extends to Piper the coverage of schedule G as well and we must reject INA's attempt now to render ineffective this critical provision of its contract.[2]

INA also argues that it has not contracted to provide to Piper a defense under these circumstances because endorsement 12 contains the following language qualifying or conditioning the schedule G coverage available to Piper:

> Coverage ... G is extended to [Piper] as an additional insured, *but only as respects their* [*sic*] *interest as owner/lessor of Piper Cheyene N-631 Pt.* (Emphasis added.)

INA asserts that the emphasized language means that liability coverage under schedule G is available to Piper only if the plaintiff's theory of recovery against Piper as defendant concerns activities of Piper in its capacity as the owner or lessor of the aircraft and not in its capacity as, for example, the aircraft's designer or manufacturer. Therefore, since the instant tort plaintiffs have complained primarily about Piper's activities in the design and manufacture of the Cheyenne leased to DOT, INA argues that coverage under schedule G must be denied.

The language relied on cannot support the semantic weight INA would have it bear. In our judgment

---

[2] INA also asserts that by operation of the omnibus clause together with endorsement 12 Piper was indemnified with respect to vicarious liability for the negligence of DOT's employee. However, this result would appear to follow from the omnibus clause alone.

"interest" in this context means interest and not capacity. Particularly persuasive in this regard is the function of "interest" and "insurable interest" within the technical argot of insurance policies. Were it not the owner and lessor of DOT's aircraft, Piper would have no interest insurable by means of DOT's aircraft liability policy. The phrase, then, serves merely to identify Piper and the propriety of its inclusion among the beneficiaries of this insurance contract.

Moreover, the purpose of the "but only" limiting language is not, as INA asserts, to exclude interests of Piper in the Cheyenne other than that of owner and lessor but, instead, is to exclude Piper's interests, of whatever nature, in aircraft other than this Cheyenne. As is revealed by the "Schedule of Aircraft" contained in the policy, by this same contract instrument INA contracted in 1976 to insure two other Piper aircraft in the hands of DOT—a Piper Navajo and a Piper Comanche. Neither of these aircraft is, or, apparently, was intended to be, included within the operation of endorsement 12 executed a year later. In the absence of the endorsement language emphasized above, however, it would be entirely ambiguous as to whether the endorsement extended to Piper the various schedules of coverage there listed with respect to the Navajo and the Comanche aircraft. Inclusion of the phrase "but only as respects their interest as owner/lessor of Piper Cheyenne N-631 Pt." eliminates the ambiguity and serves to clearly express the parties' intention that the Navajo and the Comanche not be the subject of this endorsement. The phrase accomplishes no limitation with respect to the liability coverage available to Piper in the case of an accident involving the Cheyenne aircraft specifically identified and we must conclude that the whole of the coverage specified in schedule G, including the duty of INA to conduct a defense, is here available to Piper.

In conclusion, endorsement 12 unambiguously extends to Piper the whole of the coverage specified in schedule G insofar as liability arises from an accident involving the specified Cheyenne aircraft. We therefore deny the respondent's Motion for Summary Judgment, grant the petitioner's Motion and enter judgment for the petitioner.

### Order

And Now, this 29th day of December, 1982, the motion for summary judgment of the Petitioner Piper Aircraft Corporation is hereby granted and the motion for summary judgment of the Respondent Insurance Company of North America is hereby denied and judgment is hereby entered in favor of the Petitioner and against the Respondent.