532 A.2d 857

**The ESTATE OF Daniel SANCHEZ, by its administratrix, Nannette SWADEY, Esq., Appellant,**

**v.**

**COLONIAL PENN INSURANCE, Appellee.**

Superior Court of Pennsylvania.

Argued May 6, 1987.

Filed Oct. 19, 1987.

Ubel G. Velez, West Chester, for appellant.

Perry J. Fiorvanti, Philadelphia, for appellee.

Before BROSKY, WIEAND and BECK, JJ.

WIEAND, Judge:

The issue in this appeal is whether the estate of a Delaware motorist who died as a result of injuries received in a vehicular accident in Pennsylvania is entitled to recover post-mortem work loss benefits under a policy of insurance written in accordance with a Delaware no-fault law which does not permit recovery for post-mortem work loss benefits. The trial court held that there could be no recovery and sustained preliminary objections in the nature of a demurrer to the complaint. After a close examination and careful analysis of the policy and the no-fault laws of both states, we conclude that the order of the trial court was correct. Therefore, we affirm.

On May 24, 1984, while operating a motor vehicle in Oxford, Chester County, Pennsylvania, Daniel Sanchez was involved in a vehicular accident which caused injuries leading to his death four days later. Sanchez was a resident of the State of Delaware, and his vehicle was registered in Delaware. The vehicle was insured by Colonial Penn Insurance Company (Colonial Penn) under a policy of insurance which had been written in Delaware pursuant to that State's no-fault insurance law. Colonial Penn paid to Nannette Swadey, the administratrix of Sanchez's estate, all personal injury benefits required by the Delaware Motor Vehicle Code, including medical and funeral expenses. When a claim for work loss benefits was made, however, it was denied. An action against Colonial Penn was then instituted by Sanchez's estate in Chester County, Pennsylvania. It was contended in the action that the Pennsylvania No-fault Motor Vehicle Insurance Act [1] had been incorporat-

---

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101 et seq. repealed by Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

ed into the Sanchez policy by an out-of-state coverage clause contained in the Sanchez policy. Colonial Penn filed preliminary objections in the nature of a demurrer to the complaint. When the trial court sustained these preliminary objections and dismissed the complaint, the Sanchez estate appealed.[2]

The out-of-state coverage clause upon which appellant relies is contained within the "Liability Coverage" section of the decedent's policy and provides as follows:

If an auto accident to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, we will interpret your policy for that accident as follows:

If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for bodily injury or property damage higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

No one will be entitled to duplicate payments for the same elements of loss.

Appellant argues that under this provision, Colonial was required to provide no-fault benefits equal to the minimum requirements of the Pennsylvania No-fault law, including post-mortem work loss benefits. We are unable to agree.

The out-of-state coverage clause relied upon by the appellant-administratrix provided, in relevant part, that if the insured (the decedent) were injured in an automobile accident in a state (Pennsylvania) outside the place where the insured vehicle was principally garaged (Delaware), and

---

2. The trial court's order also directed Colonial Penn to "compensate Plaintiff pursuant to Section 2118(a)(2) of the Delaware Code for decedent's net lost earnings for the period between decedent's automobile accident on May 24, 1984 and his death on May 28, 1984." This portion of the order has not been challenged on appeal.

that state had in effect a compulsory insurance or similar law requiring nonresidents to maintain insurance whenever they travelled within that state, the policy would be interpreted to provide at least the required minimum amounts and types of coverage. At the time of the accident, Pennsylvania had in effect a No-fault Act which provided compulsory coverage for automobile-related injuries sustained in this Commonwealth. Thus, according to the out-of-state clause of the decedent's policy, one must look to the Pennsylvania No-fault Act to determine the amounts and types of coverage available to the decedent's estate.

■ Section 201 of the Pennsylvania No-fault Act established the eligibility requirements for recovery of basic loss benefits. It provided:

(a) Accident within this State.—If the accident resulting in injury occurs in this Commonwealth, any victim or any survivor of a deceased victim is entitled to receive basic loss benefits in accordance with the provisions of this act.

40 P.S. § 1009.201(a). However, the scope of this provision was limited by section 110(c)(1) which provided as follows:

(1) The basic loss benefits available to any victim or to any survivor of a deceased victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance in effect in the state of domicile of the victim on the date when the motor vehicle accident resulting in injury occurs. If there is no such state no-fault plan in effect or if the victim is not domiciled in any state, then basic loss benefits available to any victim shall be determined pursuant to the provisions of the state no-fault plan in effect in the state in which the accident resulting in injury occurs.

40 P.S. § 1009.110(c)(1). Under this section, the basic loss benefits available to a victim must be determined in accordance with the provisions of the No-fault Law in effect in the victim's state of domicile at the time of the accident. See: *Hahn v. Liberty Mutual Insurance Co.*, 336 Pa.Super. 329, 485 A.2d 830 (1984); *Toter v. Knight*, 278 Pa.Super. 547,

420 A.2d 676 (1980); *DuBose v. McCoy,* 277 Pa.Super. 149, 419 A.2d 705 (1980). See also: *Swezey v. Home Indemnity Co.,* 691 F.2d 163 (3rd Cir.1982); *Pryor v. Fireman's Fund Insurance Co.,* 537 F.Supp. 971 (W.D.Pa.), *aff'd,* 696 F.2d 984 (3d Cir.1982). But see: *Wierbinski v. State Farm Mutual Automobile Insurance Co.,* 477 F.Supp. 659 (W.D. Pa.1979). Because the decedent-insured was domiciled in Delaware at the time of the fatal collision, the Delaware compulsory insurance law which was then in effect is determinative of the benefits available to the decedent's estate.

■ Section 2118(a)(2)a.5. of the Delaware Motor Vehicle Code provides:

"Insured person" for purposes of this section shall include the personal representative of an estate; provided, however, that if an accident occurs, the "net amount of lost earnings" shall include only that sum attributable to the period prior to the death of the person so injured.

21 Del.Code.Ann. § 2118(a)(2)a.5. Under this provision, "net amount of lost earnings" does not include any loss attributable to the period after death. Therefore, according to Delaware law, the decedent's estate is entitled to no post-mortem work loss benefits. Thus, the trial court correctly concluded that such benefits were not recoverable under the out-of-state coverage clause within the decedent's policy of insurance.

Thus far we have assumed that the policy provision relied upon by appellant, which is to be found in the "Liability Coverage" section of the policy, has application also to the no-fault coverage provided by the policy. This has enabled us to consider appellant's argument at face value. In fact, however, the coverage for personal injury protection benefits was provided in an amendatory endorsement to the policy which provided no-fault benefits as follows:

The Company will pay, in accordance with Subchapter 1, Chapter 21, Title 21, of the Delaware Code, to or for the benefit of the injured person:

(a) medical expenses,

(b) funeral expenses,

(c) loss of earnings, and

(d) substitute service expenses

This amendatory endorsement does not contain an out-of-state coverage clause similar to that contained in the "Liability Coverage" section of the policy.[3] Instead, the amendatory endorsement provides that no-fault coverage for personal injury benefits shall be determined in accordance with the Delaware Motor Vehicle Code.

"[A]ll provisions of an insurance contract must be read together and construed according to the plain meaning of the words involved, so as to avoid ambiguity while at the same time giving effect to all of its provisions." *Masters v. Celina Mutual Insurance Co.*, 209 Pa.Super. 111, 115, 224 A.2d 774, 776 (1966). See: *Smith v. Cassida*, 403 Pa. 404, 169 A.2d 539 (1961); *Newman v. Massachusetts Bonding & Insurance Co.*, 361 Pa. 587, 65 A.2d 417 (1949); *Delaware County Construction Co. v. Safeguard Insurance Co.*, 209 Pa.Super. 502, 228 A.2d 15 (1967). "A construction of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all of its provisions and is consistent with the general intent" of the parties. 43 Am.Jur.2d *Insurance* § 275, at 350 (1982).

In *Pryor v. Fireman's Fund Insurance Co., supra*, the plaintiff, a resident of Connecticut, had been injured when the car in which she was riding collided with another vehicle in Pennsylvania. At the time of the accident the plaintiff was covered under a policy of automobile insurance which had been issued to his father by the defendant-insurance company in Connecticut. Plaintiff commenced an action against the defendant-insurer to recover basic loss benefits

---

**3.** Portions of the insurance contract were omitted from appellant's complaint. The portions which have been copied and attached to the complaint do not contain such an out-of-state coverage clause.

under the Pennsylvania No-fault Act. Such benefits, he argued, were available pursuant to the following out-of-state coverage provision contained in his father's insurance policy:

> If an auto accident to which this policy applies occurs in any state or province other than the one in which your covered auto is principally garaged, we will interpret your policy for that accident as follows:
>
> . . . .
>
> 2. If the state or province has a compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide the required minimum amount and types of coverage.

*Id.* at 976. Finding this provision to be inapplicable, the federal district court for the Western District of Pennsylvania determined that plaintiff's recovery of no-fault benefits was limited to those available under Connecticut law. The court reasoned:

> [A] glance at the policy as a whole reveals that this isolated provision is in the liability insurance section of the policy. The first page of the policy clearly indicates a $5,000 limit as to basic reparations benefits. This limit is reiterated in the Connecticut endorsement which ... was attached to the insurance policy of the plaintiff's father. Consequently, there can be no contractual basis for additional recovery of basic reparations benefits beyond those authorized by Connecticut law.

*Id.* at 977 (emphasis in original).

So, too, in the instant case the out-of-state coverage clause relied upon by the appellant-administratrix appears within the "Liability Coverage" section of the policy and not in the amendatory endorsement which provides the coverage for personal injury protection benefits. To read the out-of-state clause into the amendatory endorsement, as appellant has suggested, would be, in effect, to rewrite the

insurance contract by inserting a new provision extending coverage beyond that allowed by the express terms of the policy. This we cannot do. Such a construction of the policy would not only conflict with the intent of the parties as expressed in the written agreement, but would neutralize the terms of the no-fault endorsement which clearly provided that a claimant's entitlement to personal injury protection benefits was to be determined solely in accordance with the Delaware no-fault insurance law. Thus, the out-of-state clause contained within the "Liability Coverage" section of the decedent's policy can have no application to the no-fault coverage provided in the amendatory endorsement.

This interpretation is consistent also with the express language of the out-of-state coverage clause contained in the "Liability Coverage" part of the policy. The plain language thereof demonstrates that the purpose of the clause was to provide adequate liability coverage to meet the requirements of "financial responsibility" and "compulsory insurance" laws of states other than Delaware. It contains no language which can be construed as providing no-fault benefits in accordance with laws enacted in other states. We conclude, therefore, that appellant may not rely on the language of the out-of-state liability coverage clause to expand no-fault coverage under an amendatory endorsement to amounts established by the Pennsylvania No-fault law for Pennsylvania residents.

Accepting as true all averments pleaded in appellant's complaint, as we must, see *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 274, 382 A.2d 715, 717 (1978), we conclude that the administratrix of the Sanchez Estate has failed to allege a cause of action entitling her to recover post-mortem work loss benefits. Therefore, we affirm the order of the trial court which sustained Colonial Penn's preliminary objections in the nature of a demurrer and dismissed the administratrix's complaint.

Affirmed.