**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-2675
_____

NICHOLAS LOMMA;
J. L., a Minor, by Anthony Lomma, Guardian

v.

OHIO NATIONAL LIFE ASSURANCE CORPORATION;
OHIO NATIONAL LIFE INSURANCE COMPANY,
Appellants
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-16-cv-02396)
District Judge: Hon. Robert D. Mariani
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 1, 2019
_____

Before: SHWARTZ, FUENTES, FISHER, Circuit Judges.

(Filed: October 8, 2019)

_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Defendants Ohio National Life Assurance Corporation and Ohio National Life Insurance Company appeal the District Court's order granting summary judgment to Plaintiffs Nicholas Lomma and J.L., a minor, by his father and guardian, Anthony Lomma, on their claim for breach of contract based on Ohio National Life Assurance's denial of death benefits pursuant to a suicide exclusion in a life insurance policy for which they are beneficiaries. Because the language of the suicide exclusion unambiguously limits coverage to premiums paid where the insured commits suicide within the first two years of the policy, we will reverse.

I

A

In 1986, Pennsylvania National Life Insurance Company issued Lora Marie Lomma a universal life insurance policy for $25,000 in coverage ("Universal Policy"). In 1994, Ohio National Life Assurance assumed and began administering Ms. Lomma's Universal Policy. The next year, Ms. Lomma increased the coverage amount under the Universal Policy from $25,000 to $100,000, effective December 4, 1995.

In 2007, Ms. Lomma applied to Ohio National Life Assurance for a renewable term life insurance policy for $100,000 in coverage ("Term Policy"). On the application, Ms. Lomma indicated that the Term Policy would replace her existing Universal Policy and that the replacement date would be upon "issu[ance] of this policy." App. 77.

2

Thereafter, Ohio National Life Assurance sent Ms. Lomma a Notice Regarding Replacement of Life Insurance and Annuities ("Notice"). The Notice provides in relevant part:

> You have indicated that you intend to replace existing life insurance . . . coverage in connection with the purchase of our life insurance . . . policy.
>
> . . . .
>
> You should recognize that a policy that has been in existence for a period of time may have certain advantages to you over a new policy.
>
> . . . .
>
> Under your existing policy, the period of time during which the issuing company could . . . deny coverage for death caused by suicide, may have expired or may expire earlier than it will under the proposed policy . . . .

App. 329.

In August 2007, Ohio National Life Assurance issued the Term Policy, which states that a "[d]eath benefit is the amount payable upon death as of the end of the policy year. However, this amount may not be payable if death is due to an excluded cause such as suicide during the first two years." App. 89. The Term Policy further describes the suicide exclusion as follows:

> If the insured dies by suicide while sane or insane or by intentional self-destruction while insane, we will not pay any death proceed[s] payable on amounts of insurance which have been in effect for less than 2 years. If the suicide or intentional self-destruction is within the first 2 contract years, we will pay as death proceeds the premiums you paid.

App. 104. The Term Policy defines "Contract Months and Years" as follows: "This contract takes effect on the contract date shown on page 3. Contract months and years are marked from the contract date. The first day of the contract year is the contract date

3

and its anniversaries." App. 102. Page 3 of the Term Policy lists the Policy Date as August 10, 2007 and the Issue Date as August 15, 2007. The Term Policy renews annually through 2066 so long as Ms. Lomma pays the premium each year on August 10th, the renewal date.

In May 2009, Ms. Lomma committed suicide. Thereafter, Anthony Lomma filed a claim for benefits on behalf of his sons, the beneficiaries under the Term Policy. Ohio National Life Assurance denied the claim because Ms. Lomma's suicide occurred within the first two contract years of the Term Policy, and the beneficiaries were only entitled to a refund of premiums paid.

B

Plaintiffs sued Defendants in the Pennsylvania Court of Common Pleas of Lackawanna County for, among other things, breach of contract arising from Ohio National Life Assurance's denial of Plaintiffs' claim for $100,000 in life insurance benefits based upon the Term Policy's suicide exclusion provision. Defendants removed the complaint to federal court. Following discovery, the parties filed cross-motions for summary judgment.

The District Court granted summary judgment to Plaintiffs on the breach of contract claim. Lomma v. Ohio Nat'l Life Assurance Corp., 329 F. Supp. 3d 78, 94-95 (M.D. Pa. 2018). It held that (1) the Term Policy contains a latent ambiguity because Ms. Lomma could have interpreted the phrase "contract years" to mean the duration of her contractual relationship with Defendants, not simply the time period in the Term Policy, id. at 90-91; (2) the Notice and the Illustration of Benefits have qualifying language and

4

do not show that the suicide exclusion period began in 2007, id. at 92; and (3) Plaintiffs established that Ms. Lomma could have reasonably believed that the suicide exclusion expired two years after she initially began paying premiums on a $100,000 life insurance policy, id. at 93-94.  Defendants appeal.

II[1]

A

When interpreting an insurance contract under the governing Pennsylvania law, we must ascertain and give effect to the parties' intent as manifested in the terms of the policy.  Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007).  Where the language is clear and unambiguous, we must follow it.  Minn. Fire & Cas. Co. v. Greenfield, 855 A.2d 854, 861 (Pa. 2004).  Where the contract language is ambiguous, we construe that language in favor of the insured.  Id.  "Contractual language is ambiguous if 'it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'"  Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 558 (3d Cir. 2008) (quoting Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 390 (Pa. 1986)).  Courts should not, however, "distort the meaning of the language or resort

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332.  We have jurisdiction under 28 U.S.C. § 1291.  Our review of a district court's order granting summary judgment is plenary, Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013), and we apply the same standard, viewing the facts and making all reasonable inferences in the non-movant's favor, Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

to a strained contrivance in order to find an ambiguity." Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999) (citation omitted).

Courts must examine "the totality of the insurance transaction involved to ascertain the reasonable expectations of the insured." Reliance Ins. Co. v. Moessner, 121 F.3d 895, 903 (3d Cir. 1997) (citations omitted). Under the reasonable expectations analysis, an insured "may not complain that [her] reasonable expectations were frustrated by policy limitations which are clear and unambiguous." West v. Lincoln Ben. Life Co., 509 F.3d 160, 171 (3d Cir. 2007) (quoting Frain v. Keystone Ins. Co., 640 A.2d 1352, 1354 (Pa. Super. Ct. 1994)). Furthermore, "[m]ere assertions that a party expected coverage will not ordinarily defeat unambiguous policy language excluding coverage." Id. at 169 (quoting Matcon Diamond, Inc. v. Penn Nat'l Ins. Co., 815 A.2d 1109, 1115 (Pa. Super. Ct. 2003)).

If an insurer relies on a policy exclusion to deny coverage, it bears the burden of proving that the exclusion applies. Canal Ins. Co. v. Underwriters at Lloyd's London, 435 F.3d 431, 435 (3d Cir. 2006); Madison Constr. Co., 735 A.2d at 106. Exclusions are not read in isolation. Rather, all of the terms of an insurance policy "must be read together and construed according to the plain meaning of the words involved." Estate of Sanchez v. Colonial Penn Ins., 532 A.2d 857, 860 (Pa. Super. Ct. 1987) (citation omitted).

B

Plaintiffs contend that the suicide clause in the Term Policy contains a latent ambiguity because the phrase "contract years" is defined with reference to "the contract

6

date shown on page 3," which contains two dates: the "Policy Date," August 10, 2007, and the "Issue Date," August 15, 2007. Appellees' Br. at 17-20. We are unpersuaded.

The Policy Date is the date the premium is due and triggers when coverage begins. See Collister v. Nationwide Life Ins. Co., 388 A.2d 1346, 1354 (Pa. 1978) (determining that coverage under life insurance policy began when insurer accepted insured's application and first premium payment since "insurer should not be permitted to enjoy . . . benefits [of the premium payment] without giving comparable benefit in return to the insured"); N. Cent. Tr. Co. v. Sec. Mut. Life Ins. Co., 53 Pa. Super. 425, 427-29 (1913) (holding that "current year" for payment of death benefits commenced on the date annual premium payments were made rather than the date the policy was issued). The Issue Date is the date the policy document is provided to the insured and triggers the time period in which the insured may cancel the policy. Because this case does not involve a question of cancellation, we focus on the policy or contract date.

The Term Policy provides that the "contract takes effect on the contract date shown on page 3," that "[c]ontract months and years are marked from the contract date," and that "[t]he first day of the contract year is the contract date and its anniversaries." App. 102. The Term Policy auto-renews each year on August 10th upon the timely payment of premiums. The final term date is August 9, 2067. The "contract date and its anniversaries" thus refer to, and the contract years are measured from, August 10, 2007.

Interpreting "contract years" in the context of the entire Term Policy therefore demonstrates that the phrase unambiguously refers to August 10th, the Policy Date. See Reliance Ins. Co., 121 F.3d at 900 ("[T]he court must examine the questionable term or

7

language in the context of the entire policy and decide whether the contract is reasonably susceptible of different constructions and capable of being understood in more than one sense." (internal quotation marks and citations omitted)). Accordingly, the District Court erred in determining that the Term Policy contains a latent ambiguity.[2]

## C

Ms. Lomma also could not have reasonably interpreted the phrase "contract years" to mean the duration of her contractual relationship with Ohio National Life Assurance and thus reasonably believed that the suicide exclusion expired two years after she obtained the $100,000 coverage under the Universal Policy in 1995.

Any purported expectation of coverage is contrary to the communications between Ms. Lomma and Ohio National Life Assurance and the language of the Term Policy. When Ms. Lomma applied for the Term Policy, she indicated that the Term Policy would replace the Universal Policy. Thereafter, Ohio National Life Assurance sent Ms. Lomma a Notice informing her: "[y]ou have indicated that you intend to replace existing life insurance . . . in connection with the purchase of our life insurance . . . ." App. 329. These communications "clearly demonstrated an objective intent to cancel" the Universal Policy and purchase the Term Policy. Scott v. Sw. Mut. Fire Ass'n, 647 A.2d 587, 595 (Pa. Super. Ct. 1994).

---

[2] Whether "contract years" refers to the Policy Date or the Issue Date, however, is not dispositive because Ms. Lomma's death was within two years of either date and hence within the two-year suicide exclusion period.

8

Further, although both policies provide $100,000 in coverage, they are entirely different policies, were issued under different policy numbers, and contain different terms, with the first policy providing universal life insurance and the second policy providing term life insurance. The Term Policy makes no reference to the Universal Policy, instead providing: "[t]he entire contract is your application, this policy and any riders or endorsements attached." App. 103.

Finally, the Notice warns that by entering into a new policy, coverage under that policy may again be subject to certain limitations such as the suicide exclusion. The Notice specifically explains that "[u]nder your existing policy, the period of time during which the issuing company could . . . deny coverage for death caused by suicide, may have expired or may expire earlier than it will under the proposed policy." App. 329. Accordingly, neither the communications surrounding Ms. Lomma's purchase of the Term Policy nor the language of the Term Policy supports a reasonable expectation of coverage.

### III

For the foregoing reasons, we will reverse the order granting summary judgment and remand to the District Court for further proceedings consistent with this opinion.