Delaware County Construction Company *v.* Safeguard Insurance Company, Appellant.

Argued December 13, 1966. Before ERVIN, P. J., WRIGHT, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (WATKINS, J., absent).

*Melvin G. Levy*, with him *McClenachan, Blumberg & Levy*, for appellant.

*James C. Brennan*, with him *Hinkson & Cantlin*, for appellee.

OPINION BY HOFFMAN, J., March 23, 1967:

This action arises out of a policy of insurance issued by Safeguard Insurance Company (Safeguard) to Delaware Construction Company (Delaware) insuring the latter for, inter alia, bodily injury liability. The facts follow:

Wilson's Hauling (Wilson) leased a crane, together with its operator and oiler, to Delaware. Delaware, in turn, leased the crane to United Engineers and Construction, Inc. (United). On December 31, 1957, Joseph W. Kelly, an employee of United, was working on a building then under construction, when he sustained fatal injuries as a result of an accident arising out of the use of the crane.

Kelly's estate subsequently instituted suit in the United States Court for the Eastern District of Penn-

sylvania for damages arising from the wrongful death of Kelly. The suit was filed originally against Wilson alone, but, thereafter, both Delaware and United were brought in as third-party defendants. United then filed a cross-claim against Delaware based on an indemnity provision in Delaware's agreement with United. This provision stated that Delaware would "save the lessee [United] harmless and indemnify him from every expense, liability or payment by reason of any injury to any person or persons, including death, or by reason of any damage to property, suffered through any act or omission of the lessor [Delaware] or any one directly or indirectly employed by him in the prosecution of the work covered by this order."

After suit was instituted in the District Court, Delaware called upon Safeguard to represent Delaware's interests in the action, including the claim for indemnification by United. Safeguard notified Delaware that it would not represent Delaware as to United's cross-claim, since the policy specifically excluded coverage for any liability assumed by Delaware under contract. Safeguard did, however, undertake Delaware's defense in the District Court action in all other respects. At trial, Delaware retained private counsel to defend against United's cross-claim.

During the trial in the District Court a settlement was effected. Under the terms of the settlement, Safeguard contributed the sum of $3500, in consideration for which it obtained for Delaware a complete release of all claims by the Kelly estate. Delaware, in its own right, paid the sum of $5000 for which it received from United a complete release of all claims arising out of United's cross-claim for indemnification.

Subsequently, Delaware instituted this action against Safeguard to recover the sum it had paid in settlement of the United cross-claim together with costs and counsel fees in that action. The lower court

found that Safeguard wrongfully disclaimed coverage, and that Delaware was entitled to recover $5,750.00 under the policy issued to it by Safeguard. Judgment was entered in that amount, and this appeal followed.

It is agreed by the parties that the basic issue here involved is whether the terms and conditions of the insurance policy provided coverage to Delaware for liability assumed by contract.

The statement of coverage in the policy upon which Delaware bases its claim provides:

"Coverage B—Bodily Injury Liability—Except Automobile

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident."

Under "Exclusions," the policy provides:

"This policy does not apply:

"(a) *to liability assumed by the insured under any contract or agreement except under coverages B and D, (1) a contract as defined herein or (2)* . . . ." (Emphasis supplied).

Delaware argues that this provision excludes liability assumed by the Insured except liability arising under coverages B and D. Since "Coverage B" is the coverage here involved, Delaware concludes that the exclusion should not apply.

Safeguard argues, on the other hand, that this provision excludes coverage under any contract or agreement except liability under coverages B and D arising from a "contract" as defined in the policy. Both parties agree that the agreement by which Delaware was to indemnify United was not such a "contract".[1]

---

[1] "Contract" is defined in the following manner in the policy: "(a) Contract. The word 'contract' means, if in writing, a lease of

In deciding this question we are guided by the rule of construction, most recently re-enunciated by us in *Masters v. Celina Mutual Insurance Company*, 209 Pa. Superior Ct. 111, 115, 224 A. 2d 774, 776 (1966). This rule requires that "all provisions of an insurance contract . . . be read together and construed according to the plain meaning of the words involved, so as to avoid ambiguity *while at the same time giving effect to all of its provisions.*" (Emphasis added). See *Newman v. Massachusetts Bonding Company*, 361 Pa. 587, 65 A. 2d 417 (1949); *Smith v. Cassida*, 403 Pa. 404, 169 A. 2d 539 (1961).

The difficulty with Delaware's construction is that it is intelligible only if we ignore the enumeration of two categories which immediately follow the phrase "under coverages B or D". These clauses are "(1) a contract as defined herein or (2) [a second clause, which is irrelevant in this case]." It is certainly our duty, in interpreting this contract, to give effect to these provisions also.

The correctness of the interpretation proposed by Safeguard would have been apparent had a comma been inserted after the word "except". Under such circumstances, the phrase "under coverages B and D" would be clearly understood to mean that this policy does not apply to liability assumed by the insured under any contract or agreement except a contract as defined herein when the liability arises under coverages B and D.

The instant case is similar to *Richter v. Com. Cas. Co.*, 93 Pa. Superior Ct. 28 (1928).

The policy in that case provided coverage for loss "resulting within thirty days from date of accident solely from such injuries which shall have caused con-

premises, easement agreement, agreement required by municipal ordinance, side track agreement, or elevator or escalator maintenance agreement."

tinuous total disability from date of accident to date of loss, but only when such injuries are sustained.

"While traveling as a passenger in a place regularly provided for passengers, within any common carrier's public passenger conveyance (animals, aerial machines or conveyances excepted). But only when such injuries are sustained by reason of the wrecking of such conveyance."

We stated: "It is obvious that the use of a period after the word 'sustained' is improper if the 'while traveling' clause is to be read as a part of and as limiting the preceding part of the section. If this punctuation be disregarded the section as a whole is intelligible and the different parts consistent with each other. On the other hand, if the portions be separated, in accordance with the contention of appellant, neither is complete in itself." (p. 32).

We then concluded: "This policy was construed by the Circuit Court of Appeals, Eighth Circuit, in the case of Commonwealth Casualty Company v. Aichner, 18 Fed. Rep., 2nd Series, p. 879. The contentions now advanced in behalf of this beneficiary were made in that case and the same construction of Section A was there urged. In the course of the opinion we find the following pertinent paragraph: 'It may safely be said that if a comma, semi-colon, colon, or no punctuation at all had appeared after the word 'sustained' and before the words 'while traveling,' the claim of ambiguity in or liability under Section A would never have occurred to any one. The entire controversy arises over a matter of uncertain and inexact punctuation. This alone cannot be suffered to change the true and apparent meaning of an instrument.'

"In interpreting any contract the words and not the punctuation are the controlling guide: 'The punctuation of a document, although it may aid in determining the meaning, will not control or change a meaning

which is plain from a consideration of the whole document and the circumstances. Nor can punctuation marks be allowed to give the contract an unconscionable and inequitable meaning. In order to give effect to the intent of the parties it has been held that the court may employ proper punctuation marks in reading the contract': 13 C. J. 535; Small Co. v. American Sugar Refining Co., 267 U.S. 233; White v. Smith et al., 33 Pa. 186; Abbott's Estate, 198 Pa. 493." (pp. 33-34). See also 1 Couch, Insurance, §15:13, p. 660 (2d ed. 1959), and cases cited therein.

This case is unlike *Barnes v. North American Accident Insurance Company,* 176 Pa. Superior Ct. 294, 107 A. 2d 196 (1954), where the insurer suggested that an ambiguity in the policy might be clarified by a comma. We then stated, "Although ambiguities caused solely by punctuation will be resolved by considering the plain meaning of the words (Richter v. Commonwealth Casualty Co., 93 Pa. Superior Ct. 28), the addition of a comma in this phrase would not result in the desired clarity. The exclusion is so worded as to give rise to several interpretations, with or without commas."

In the instant case, however, the addition of a comma does clarify any uncertainty in the policy and gives specific meaning to the two categories in Exclusion (a) which would otherwise be rendered meaningless. Although ambiguities in an insurance policy are to be construed against the company which has prepared it, the plain meaning of the words in this contract, when considered in their entirety, do not require the application of this rule.

We hold, therefore, that the lower court erred in its interpretation of the insurance policy, and that the policy did exclude coverage arising out of any contract except a contract as defined therein. Since the contract in this case did not fall within that definition, Delaware could not recover under the policy. Our hold-

ing in this case, however, should not be construed as granting a license to insurance companies to frame policies so that their language, punctuation, or grammar are calculated to mislead. Extra care should be taken by such companies to insure that their policies are without a suggestion of ambiguity, at the peril of being forced to pay for greater coverage than they had intended to assume.

Order reversed.