TWIN CITY FIRE INSURANCE
COMPANY, Defendant
Below, Appellant,

v.

DELAWARE RACING ASSOCIATION
and Delaware Park LLC, Plaintiffs
Below, Appellees.

No. 373,2003.

Supreme Court of Delaware.

Submitted: Nov. 18, 2003.
Decided: Dec. 29, 2003.

Joseph S. Naylor, Esquire, of Pepper Hamilton LLP, Wilmington, Delaware, for the Appellant.

James F. Burnett, Esquire, of Potter Anderson & Corroon LLP, Wilmington, Delaware, for the Appellees.

Before VEASEY, Chief Justice, BERGER and JACOBS, Justices.

JACOBS, Justice.

Twin City Fire Insurance Company ("Twin City") appeals from an order of the Superior Court granting summary judgment in favor of Twin City's insureds, Delaware Park Racing Association and Delaware Park, LLC,[1] and denying Twin City's cross motion for summary judgment. In ruling for Delaware Park, the trial court held that the exclusion in Twin City's general liability excess policy for "Athletic Activity" did not encompass (and, therefore, that the Twin City policy covered) claims against Delaware Park for personal injuries sustained by three persons who were riding and/or exercising racehorses at Delaware Park.[2] We conclude, for the reasons next discussed, that the Superior Court ruling is correct in all respects and accordingly, we affirm.

### Facts

On November 5, 1999, three "breeze riders," Eric L. Jones, Roberto Montiel, and

1. Delaware Park Racing Association and Delaware Park, LLC are referred to collectively in this Opinion as "Delaware Park."

2. *Delaware Racing Association and Delaware Park, LLC*, C.A. No. 01C–12–051, 2003 WL 1605764 (Del.Super., Mar. 26, 2003) ("Opinion")

Leah Waldman were injured during a "breeze" when a stray horse that had gotten loose collided with them, causing all horses and riders to fall. A "breeze" is a training exercise in which a horse is run out of a starting gate, usually timed at a speed to the horse's potential. The purpose of the breeze ride was to exercise the horses' muscles and to accustom the horses to running in close proximity to one another without being frightened. The riders were not racing the horses, but, rather, were exercising them as part of a morning workout.

Jones and Montiel had been trained and employed as both exercise riders and jockeys. The third rider, Waldman, was employed only as an exercise rider. As a result of the collision, each of these three riders suffered personal injury and filed an action for damages against Delaware Park and others. The Waldman lawsuit was settled for $1.2 million, and the Jones and Montiel lawsuits remain pending. Twin City refused coverage of all these claims based on an exclusion in the excess policy that it had issued to Delaware Park.

By way of background, Delaware Park obtained its statutorily-required liability insurance coverage through Lowe–Tillson, an insurance broker that had represented Delaware Park for several years. Through Lowe–Tillson, Delaware Park renewed a two-tiered insurance plan in which CNA Insurance Company ("CNA") provided the primary coverage with limits of $1 million per occurrence, and Twin City provided the excess coverage in a secondary, umbrella policy having limit of $10 million per occurrence. Given those coverages, after the $1.2 million settlement was reached in the Waldman lawsuit, CNA contributed to that settlement its policy

limits of $1 million, and Delaware Park then looked to Twin City to pay the $200,000 excess. Twin City denied coverage, based on an exclusion contained in its policy. The language of the exclusion upon which Twin Cities relied in denying coverage reads as follows:

Description of Designated "Athletic Activity": HORSERACING.

The policy does not apply to "bodily injury" to any person while practicing or participating in any "Athletic Activity" shown in the above Schedule. For the purposes of this endorsement, "Athletic Activity" means physical fitness activity including gym classes or similar activities; or a sports or athletic contest or exhibition that you [the insured] sponsor.[3]

Delaware Park then filed this coverage action in the Superior Court. After discovery, both sides filed cross motions for summary judgment. After finding that the Twin Cities policy covered the three underlying claims, the Superior Court granted Delaware Park's motion for summary judgment, and denied Twin Cities' cross motion. Twin Cities appealed from the order implementing those rulings.

### Analysis

The issue presented on the summary judgment motions in the trial court was one of law: was the activity in which the breeze riders were engaged "horseracing" within the meaning of the above-quoted policy exclusion? The trial court answered that question in the negative. Twin City's appeal presents the identical issue. This Court reviews, *de novo*, rulings that involve the interpretation of contract language, including policies of insurance.[4] This Court also reviews *de novo* a

---

**3.** "Umbrella Liability Insurance Policy" effective April 1, 1999, Endorsement 3.

**4.** *ABB Flakt, Inc. v. Nat'l Union Fire Ins. Co.,* 731 A.2d 811, 816 (Del.1999).

decision granting summary judgment.[5] Because in this case all parties agreed that no material issue of fact precluded the entry of summary judgment, this Court's sole task is to determine and apply the principles of law that govern the interpretation of the parties' contract.[6]

In the trial court, Twin Cities claimed that coverage was excluded because the activity in which the breeze riders were engaged when they sustained their injuries (November 5, 1999) was "practicing or participating" in horse racing. The Court concluded that the breeze riders were clearly not "participating" in horse racing, because:

> No races were scheduled or took place on that date. At best, there was a conditioning or exercising, and learning to "ride in company." There was no evidence that the breeze riders ever rode the horses in question, in a race or otherwise, prior to that date. Indeed, Ms. Waldman was not considered to be a jockey and presumably couldn't participate in the formal horseracing presented at Delaware Park.[7]

That ruling was not dispositive, however, because there remained the question of whether the breeze riders were "practicing" horse racing. On that issue the trial court found the policy language to be "poorly drafted" and ambiguous. Because of the ambiguity, the trial court applied both the *contra preferentem* rule of construction, which requires that the ambiguity be resolved against the drafter (here, Twin Cities), and also the rule of construction requiring that exclusions in statutorily required insurance policies be construed narrowly. Applying those rules of construction, the trial court interpreted the exclusion for "practicing" horse racing as encompassing "activities directly related to the presentation of a scheduled or ongoing race." Because the conditioning or general training activity in which the breeze riders were engaged did not fall within that category, the breeze riders' personal injury claims were found to be covered under the Twin City policy.[8]

On appeal, Twin City claims that the trial court erred in three separate respects. First, Twin City argues that the court erroneously determined that the exclusion was ambiguous because under the exclusion's clear language, the breeze riders were "participating in" or "practicing" horseracing as a matter of law. Second, Twin Cities argues that even if the exclusion was ambiguous, the court nonetheless improperly construed the policy against Twin Cities under both the *contra preferentem* rule and the rule requiring narrow construction of insurance policy exclusions. Third, Twin Cities argues that even under a narrow construction of the exclusion, the result reached by the trial court was erroneous, because the court's interpretation of the policy effectively read the term "practicing" out of the exclusion.

These claims generate three issues: (1) Is the policy exclusion ambiguous? (2) If so, was the *contra preferentem* rule of construction and/or the rule requiring a narrow construction of the exclusion properly applicable in these circumstances? (3) If so, did the trial court nonetheless erroneously adopt an interpretation that effectively read the term "practicing" out of the exclusion? We address these issues in that order.

---

**5.** *Id.*

**6.** *Pike Creek Chiropractic Center, P.A. v. Robinson*, 637 A.2d 418, 420 (Del.1994).

**7.** Opinion, at 2003 WL 1605764 *3 (footnotes omitted).

**8.** Opinion, at 2003 WL 1605764 *4.

### 1. Is the Exclusion Ambiguous?

 Under standard rules of contract interpretation, a court must determine the intent of the parties from the language of the contract.[9] A determination of that kind will sometimes require the court to decide whether or not the disputed contract language is ambiguous. Contract language is ambiguous if it is "reasonably susceptible of two or more interpretations or may have two or more different meanings."[10] Where no ambiguity exists, the contract will be interpreted according to the "ordinary and usual meaning" of its terms.[11]

The analysis starts with the language of the policy exclusion, which relevantly states that "[t]his policy does not apply to 'bodily injury' to any person while *practicing or participating* in any "Athletic Activity" shown in the above Schedule."[12] The only "Athletic Activity" shown in the schedule is "HORSERACING." In fine print, "Athletic Activity" is also defined, *inter alia,* as a "sports or athletic contest or exhibition that you [the insured] sponsor." Because the policy excludes coverage both for "participating in" and for "practicing" horseracing, the question of whether or not the exclusion is ambiguous must be answered separately for each excluded activity.

 The trial court first held as a matter of law that the breeze riders were not participating in horseracing. That holding amounted to an implicit ruling that the term "participating in" horseracing was not ambiguous. We agree with both rulings. The Delaware Thoroughbred Racing Commission's *Rules of Racing for Delaware* define "racing" as a "running contest between horses, ridden by Jockeys, over a prescribed course, at a recognized meeting, during regular racing hours, for a prize."[13] It is undisputed that the "breeze" in which the breeze riders were engaged was not a contest, was not conducted during regular racing hours, and did not involve a prize. Nor was any ongoing race scheduled by Delaware Park taking place during the time that the breeze was occurring. The uncontroverted testimony of the breeze riders was that the activity in which they were engaged was not a race but a "morning workout" or "exercise."[14] The testimony also confirms that when a horse is breezed or exercised in company with other horses, the object is not to pull away from other horses and get to the finish line first, but instead to try to keep the horses close together.[15]

For these reasons, the trial court was correct in determining, as a matter of law, that the "breeze activity" in which the breeze riders were engaged at the time of their injury did not constitute "participating" in horseracing. That leads us to the second threshold issue, which is whether

---

9. *Kaiser Alum. Corp. v. Matheson,* 681 A.2d 392, 395 (Del.1996).

10. *Id. (citing Rhone–Poulenc Basic Chems. Co. v. American Motorists Ins. Co.,* 616 A.2d 1192, 1196 (Del.1992)).

11. *Rhone–Poulenc,* 616 A.2d at 1195.

12. A–41 (italics added).

13. Delaware Thoroughbred Racing Commission, *Rules of Racing for Delaware ("Rules of Racing"),* Rule 1.42.

14. A–66 (Waldman Dep. at 28); B–32 (Jones Dep. at 8); B–7 (Montiel Dep. at 7). Rule 1.63 of the *Rules of Racing* defines "workout" as a "training exercise of a horse on the training or main track of a [racetrack] during which such horse is timed for speed over a specified distance".

15. A–76–A77 (Waldman Dep. at 60–62); A–93 (Jones Dep. at 69).

the exclusion term "practicing" to participate in horse racing was ambiguous.

■ Regarding that issue, the trial court held—this time explicitly—that the term "practicing" was ambiguous. That conclusion was correct, because the disputed term is reasonably susceptible to two or more interpretations. One interpretation, advocated by Twin City, is that "practicing" refers to an exercise designed to acclimate *horses* to actual racing conditions. That interpretation is reasonable, because it can be argued that is what (*inter alia*) the "breeze" workout is intended to accomplish.

A second, but also reasonable, interpretation, advocated by Delaware Park, is that for the injury to be excluded from coverage, the *injured person* must be either (i) actually participating in a specific horse race sponsored by the insured (Delaware Park) or (ii) more pertinent to the issue here, *practicing* to participate in a horse race sponsored by Delaware Park. That interpretation flows from Delaware Park's premise that the activity must be viewed from the perspective of the *"injured person,"* i.e., the rider, and not the horse, because the exclusion refers to bodily injury to a *"person* while practicing or participating in" horse racing. It also is based on the fine print definition of "Athletic Activity" as a "sports...contest or exhibition that you [the insured] sponsor."

Although the issue is one of first impression in Delaware, the trial court's conclusion that the exclusion language ("practicing" horse racing) is ambiguous, is supported by case law from other jurisdictions. In *Mountain States Mutual Casualty Co. v. Northeastern New Mexico Fair Ass'n,*[16] a jockey was injured by being thrown while galloping his horse around the track, when dogs that had strayed onto the track attacked the horse. Based on a policy exclusion that was virtually identical to the exclusion at issue here, the racetrack's liability insurer refused to defend or indemnify the racetrack owners against liability arising out of an underlying personal injury action filed by the jockey. The New Mexico Supreme Court found the exclusion ambiguous, and held that the jockey had not been "practicing" for the race merely by galloping the horse around the track, because trainers who were not jockeys often performed the same activity to exercise horses.

Similarly, in *Tropical Park, Inc. v. United States Fidelity and Guaranty Co.,*[17] a freelance jockey was injured while galloping a horse around the track. The insurer refused to indemnify or defend the racetrack owners in a resulting personal injury action by the jockey against the racetrack, again relying on a policy exclusion almost identical to the clause at issue here. Holding for the track owners, the court found that the horse was only being exercised, because it had not been run, nor was it scheduled to run, in any race at the time of the accident. Reasoning that the exclusion had to be interpreted from the perspective of the rider rather than the horse, the court found the jockey's activity comparable to that of a groomer whose job was to brush the horses.

The ambiguity of the exclusion in the present policy is perhaps best underscored by comparing its language to the exclusion language interpreted by the Louisiana Court of Appeal in *Colson v. Louisiana State Racing Commission.*[18] There, the court held that the policy endorsement

16. 84 N.M. 779, 508 P.2d 588 (1973).

17. 357 So.2d 253 (Fla.Dist.Ct.App.1978).

18. 726 So.2d 432 (La.Ct.App.1999).

excluded from coverage a claim by a jockey who had been injured in a practice race for horses that had never raced on a track. The disputed policy language in *Colson*, like the disputed language here, excluded "practicing for or participating in" horseracing; but the exclusion then went on to say:

> For the purposes of this endorsement any person 'practicing for or participating in' shall include any person riding or driving a horse for the purpose of warmup, exercise, practice or race.[19]

Had the Twin City exclusion contained that language, that exclusion would have unambiguously covered the activities of the injured breeze riders in this case. The absence of that language underscores the correctness of the trial court's determination that the policy language excluding coverage for "practicing" horseracing, is ambiguous.

## 2. Did The Trial Court Correctly Apply The *Contra Preferentem* Rule of Construction?

Having found as a threshold matter an ambiguity in the policy exclusion, the trial court then applied the well-accepted *contra preferentem* principle of construction, which is that ambiguities in a contract should be construed against the drafter.[20] The second issue presented to us, which is one of law, is whether the trial court erred in applying that rule of construction to the Twin City policy exclusion. We conclude that the trial court did not

err by interpreting the exclusion in accordance with that principle.

It is undisputed that neither Delaware Park nor its broker had any role in drafting the exclusion. Twin City was "the entity in control of the process of articulating the terms,"[21] and it was therefore the "obligation of the insurer to state clearly the terms of the policy."[22] This Court has held that "if the contract in such a setting is ambiguous, the principle of *contra preferentem* dictates that the contract must be construed against the drafter," and that "[c]onvoluted or confusing terms are the problem of the insurer...not the insured."[23]

Twin Cities rests its contrary argument upon our statement in *Kaiser Alum. Corp. v. Matheson* that the rule of *contra preferentem* should be a tool of last resort where the disputed language is "hopelessly ambiguous,"[24] i.e., cannot be resolved by resort to extrinsic evidence. This argument, based upon supposed evidence that was never placed before the trial court, is fatally inconsistent with Twin Cities' concession at the trial court level, that there were no material facts in dispute.

In addition, the argument ignores our statement in *Kaiser Aluminum* that application of the *contra preferentem* rule is particularly appropriate in cases where "alternative formulations indicate that these provisions could easily have been made clear."[25] As indicated in our discussion of *Colson* above, this is such a case. Indeed, in its Opinion, the trial court noted

---

19. *Id.* at 433–434.

20. *Kaiser Alum. Corp. v. Matheson*, 681 A.2d at 398 (*citing* RESTATEMENT (SECOND) OF CONTRACTS § 206 (1981); Arthur L. Corbin, *et al.*, *Corbin on Contracts*, § 559, supp. at 337 (1960 & Supp.1996).

21. *Penn Mutual Life Ins. Co. v. Oglesby*, 695 A.2d 1146, 1150 (Del.1997)

22. *Id.* at 1149.

23. *Id.* at 1150.

24. 681 A.2d at 398–399.

25. *Id.* at 399.

that Twin City, a member of the insurance industry, was presumably aware of the case law relating to athletic activity exclusions and could have chosen to use language that would have defined the phrase "any person while practicing or participating" to include "any person riding or driving a horse." [26]

We conclude, for these reasons, that the trial court's application of the *contra preferentem* rule to the exclusionary clause, resulting in the rejection of Twin City's interpretation and the acceptance of Delaware Park's, was legally correct.[27]

### 3. Did the Trial Court's Interpretation Of The Exclusion Language Render The Term "Practicing" Nugatory?

 Twin City's third, and final claim of error is that even if the exclusion is construed against the drafter, the interpretation adopted by the trial court was incorrect because it effectively reads the term "practicing" out of the contract. The trial court held that the term "practicing" referred to practice activities that were "directly related" to a scheduled race. That construction, Twin City argues, conflates the terms "participating in" and "practicing," and makes them redundant, in violation of the principle that where possible, a court should give effect to all contract terms.

We disagree. The trial court's interpretation of the term "practicing [for] horseracing" was a reasonable construction of the policy language, which included in the definition of "Athletic Activity" a "sports or athletic contest or exhibition that you [the insured] sponsor." That definition envisions a horserace officially scheduled by Delaware Park, consistent with the definition of "racing" in the *Rules of Racing.* It therefore was reasonable for the trial court (1) to interpret the exclusion term "participating in" horseracing as covering cases where the rider is injured while actually participating (as a rider) in a race officially scheduled and sponsored by Delaware Park, and (2) to interpret the term "practicing" to encompass situations where a rider is injured while practicing to participate in an officially sponsored, scheduled horse race—in advance of that race.

Twin City has not attempted to explain in any reasoned way how or why that interpretation collapses the distinction between "participating" and "practicing," or otherwise renders those two terms redundant. We find Twin City's challenge on this ground lacking in merit.

### Conclusion

For the foregoing reasons, the judgment of the Superior Court is affirmed.

---

26. Opinion at 2003 WL 1605764 *3 and n. 20.

27. *Given that disposition, we do not reach* Twin City's alternative argument that the trial

court erred in applying the rule requiring a narrow construction of exclusions from statutorily-mandated policy coverage.