**HERCULES INCORPORATED,
a Delaware Corporation,
Plaintiff,**

v.

**ONEBEACON AMERICA INSURANCE COMPANY, et al., Defendants.**

**C.A. No. 02C–11–237 SCD.**

Superior Court of Delaware,
New Castle County.

Submitted Dec. 2, 2003.
Decided Jan. 22, 2004.

John E. James, of Potter, Anderson & Corroon, L.L.P., Wilmington, DE, and Kent T. Withycombe, (argued), of Dickstein Shapiro Morin & Oshinsky, L.L.P., Washington, D.C., for Plaintiff Hercules Incorporated.

Jonathan L. Parshall, of Murphy, Spadaro & Landon, Wilmington, DE, and Vineet Bhatia (argued), of Susman Godfrey, L.L.P., Houston, TX, for Defendants Certain Underwriters at Lloyd's London, Cer-

tain Insurance Companies in London Market, North River Insurance Company, and Excess Insurance Company, Limited.

Christine L. Davis, and Frank E. Noyes, II, of White and Williams, L.L.P., Wilmington, DE, for Defendants OneBeacon America Insurance Company, Lumbermens Mutual Casualty Company, and Seaton Insurance Company.

B. Wilson Redfearn, of Tybout, Redfearn & Pell, Wilmington, DE, for Defendant Travelers Casualty and Surety Company.

David C. Malatesta, Jr., of Kent & McBride, P.C., Wilmington, DE, for Defendant Employers Mutual Casualty Company.

Donald M. Ransom, of Casarino, Christman & Shalk, Wilmington, DE, for Defendants ACE Property & Casualty Company, Century Indemnity Company, Indemnity Insurance Company of North America, Pacific Employers Insurance Company.

Anthony G. Flynn, and Timothy J. Houseal, of Young Conaway Stargatt & Taylor, L.L.P., Wilmington, DE, for Defendants AIU Insurance Company, Allianz Insurance Company, Allianz Underwriters Insurance Company, American Home Assurance Company, American Re–Insurance Company, Granite State Insurance Company, INSCO Limited, International Insurance Company, Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA.

Robert J. Katzenstein, of Smith, Katzenstein, & Furlow, Wilmington, DE, for Defendant Allstate Insurance Company.

Barbara A. Fruehauf, of Cattie and Fruehauf, Wilmington, DE, for Defendant Argonaut Insurance Company.

Arthur G. Connolly, III, of Connolly Bove Lodge & Hutz, L.L.P., Wilmington, DE, for Defendants Centre Insurance Company, and Home Insurance Company.

Carmella P. Keener, and Ross Dixon Bell, of Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, DE, for Defendant Continental Casualty Company.

J.R. Julian, of J.R. Julian, P.A., Wilmington, DE, for Defendants Everest Reinsurance Company, and Mt. McKinley Insurance Company.

Sean J. Bellew, of Cozen & O'Connor, Wilmington, DE, for Defendant Federal Insurance Company.

Kevin F. Brady, of Skadden Arps Slate Meagher & Flom, L.L.P., Wilmington, DE, for Defendant General Reinsurance Corporation.

Michael J. Goodrick, of Michael J. Goodrick, P.A., Wilmington, DE, for Defendant Zurich American Insurance Company.

John Dillon, of Hamilton Altman Canale & Dillon, L.L.C., Bethesda, MD, and Robert J. Leoni, of Morgan Shelsby & Leoni, Newark, DE, for Defendant Employers Insurance Company of Wausau.

**O P I N I O N**

DEL PESCO, J.

The issue in these cross-motions for Summary Judgment is whether Hercules Incorporated ("Hercules") must satisfy a self-insured retention or deductibles in addition to exhausting the underlying products liability coverage before the North River Insurance Company's ("North River") excess insurance policies apply to claims for injuries resulting from asbestos.

*Facts*

Haveg, a party to this litigation, is a wholly-owned subsidiary of Hercules.

Hercules purchased primary Comprehensive General Liability policies from Aetna Casualty and Surety Company ("Aetna") as scheduled underlying insurance to excess policies issued by North River to insure Haveg for all but the last two years of the 1973–1985 policy periods at issue. The Aetna policies which cover claims for asbestos bodily injury product liability lawsuits and claims against Haveg will soon or have already been exhausted. Hercules seeks a declaration that the North River policies attach without associated self-insured retentions or deductibles.

### Legal.Standard

The legal principles to be applied in interpreting an insurance policy are well established and can be borrowed directly from the Delaware Supreme Court decision interpreting other portions of the insurance program which covered Hercules during prior years.

> Our analysis ... begins with the language of the insurance policies. Proper construction of the policy language is a question of law.... Our goal is to ascertain the intent of the contracting parties based on the contract terms. Ambiguity exists when the contractual provisions in controversy are "reasonably or fairly susceptible of different interpretations or may have two or more different meanings." (citations omitted).[1]

A firm foundational rule in the construction of insurance contracts is that the expressed intent of the parties is to be ascertained by examining the contract or policy as a whole.[2] All provisions of a policy are to be read together and construed according to the plain meaning of the words involved, as to avoid ambiguity while at the same time giving effect to all provisions.[3]

The parties argue that the policy provisions are unambiguous. I find that to be the case, and will not consider the extrinsic evidence offered by North River.

### Analysis

The coverage at issue here is for Haveg, a subsidiary of Hercules which was covered by the Hercules insurance program. Haveg always had underlying liability coverage, although the amount changed during the period in question. Hercules was self-insured, in other words, it covered its own losses up to the attachment point of the excess program. That distinction is important because is explains why the program is structured to differentiate between losses covered by underlying insurance and those which were subject to a self-insured retention.

### North River Policy JU 0040

■ The North River JU 0040 policy contains two provisions which are at the heart of this dispute regarding the attachment point of North River.

> 2. COMPANY'S LIMIT OF LIABILITY—RETAINED LIMIT
>
> * * * *
>
> With respect to PERSONAL INJURY, PROPERTY DAMAGE ... the Company's liability shall be only for

1. *Hercules, Inc., v. AIU Ins. Co.*, 784 A.2d 481, 489 (Del.2001).

2. *See Continental Casualty Co. v. Signal Ins. Co.*, 119 Ariz. 234, 580 P.2d 372 (Ct.App. 1978); *Supreme International Corp. v. Home Ins. Co.*, 428 So.2d 295 (Fla.Dist.Ct.App. 1983); *National Ins. Underwriters v. Lexington Flying Club, Inc.*, 603 S.W.2d 490 (Ky.Ct.App. 1980); *American Casualty Co. v. Purcella*, 163 Md. 434, 163 A. 870 (1933); *Dieckman v. Moran*, 414 S.W.2d 320 (Mo.1967); *See also* Couch on Insurance 3d § 21:19 (2001).

3. *Delaware County Constr. Co. v. Safeguard Ins. Co.*, 209 Pa.Super. 502, 228 A.2d 15 (1967).

the ULTIMATE NET LOSS in excess of the ASSURED'S RETAINED LIMIT defined as:

(a) The limits of liability of the underlying:

Insurance scheduled if such insurance is applicable or would be applicable except for the exhaustion of the limits of liability of such underlying insurance;

or

(b) The amounts stated in Item 3 of the Declarations of this policy;

and then for an amount not exceeding the amount specified in Item 2 of the Declarations of this policy.[4]

---

### DECLARATIONS

Item 3: RETAINED LIMIT

$2,000.000 Bodily injury per accident
$2,000,000 Bodily injury per person caused by disease
$4,000,000 Bodily injury aggregate each policy year

---

In computing such aggregate the first $25,000 of Ultimate Net Loss of each and every occurrence will not be included in computing the $4,000,000 aggregate Retained Limit stated above.[5]

Hercules interprets the above language to mean that the $25,000 deductible applies only to the claims that are self-insured, not to the claims that are paid by the scheduled insurance. Its argument relies upon the fact that the limits of liability provision uses an OR between the two types of primary coverage. Hercules argues that since 2(b) references Item 3, and Item 3 is the place where the $25,000 deductible is mentioned, the proper interpretation is to apply the deductible only to the claims not

paid by the scheduled underlying insurance, in this case, by Aetna.

North River interprets the language differently. It says that the policy has a defined term: RETAINED LIMIT. It is a term which is important to this discussion, but also appears in other contexts in the policy.[6] The term RETAINED LIMIT is defined as the "[i]nsurance scheduled" or the "amounts stated in Item 3 of the Declarations." In other words, the defined term includes both scenarios: underlying insurance or the self-insured retention. To interpret the provisions differently would require ignoring a clear term of the policy, a clearly stated definition.

I am persuaded by the view of North River. The word OR, usually a disjunctive, is used in this policy to indicate either of two things which meet the definition of RETAINED LIMIT. That interpretation is the only way to give meaning to all of the policy language.[7] The $25,000 deductible is applicable to all the claims presented which form a part of the aggregate of $4,000,000. The North River policy attaches after the exhaustion of that sum.

### CURTIS BAY & North River Policies
### JU 0306, JU 0833, JU 1233

■ The arguments on the other policy provisions relate to the consideration to be given to the Hercules captive insurance company, Curtis Bay. The dispute in JU 0306 arises out of a provision in the Limit of Liability provision of the policy, and the subsequent Endorsement # 5:

II. Limit of Liability -

---

4. North River Insurance Policy JU 0040 at HPC 0007782.

5. *Id.* at HPC 0007780.

6. In North River Policy JU 0040, "Retained Limit" is also referenced in Section A, Art. V ¶¶ 5, 7; and Section E, Art. II.

7. *See supra* notes 2, 3.

The Company hereon shall be only liable for the ultimate net loss the excess of either:-

    (a) the limits of the underlying insurances as set out in the attached schedule in respect of each occurrence covered by said underlying insurances,

or

    (b) $2,000,000 ultimate net loss in respect of each occurrence subject to an aggregate limit of not less than $4,000,000 ultimate net loss during each policy year not covered by said underlying insurance.

    (hereinafter called the "underlying limits")

* * * *

It is further understood and agreed that as respects the self insured retention specified in Insurance Agreement II the first $250,000 of each and every loss, each occurrence shall not be taken into account when assessing the impairment of the specified $4,000,000 self insured aggregate amount.[8]

All agree that the above language means that the $250,000 deductible applied only to the self-insured retention, not to the claims subject to coverage by Aetna—the underlying insurance. Interestingly, the fact that there is such agreement supports the notion that an OR used in policy language can mean either of the two choices, not the disjunctive.

When policy JU 0306 commenced, Aetna provided $2,000,000 per occurrence and $4,000,000 aggregate coverage. During the tenure of the North River policy, the relationship with Aetna changed. The $2,000,000 was reduced to $1,000,000, and the Hercules captive bridged the gap between Aetna and North River. Apparently the manner in which the gap was bridged varied, at some times with Curtis Bay providing a second layer of insurance of $1,000,000 over Aetna's $1,000,000 and at other times providing reinsurance to Aetna.

Endorsement # 5 was added to the policy a year after its inception. It provides:

[Contrary to the other policy provisions, as applied to Hercules/Haveg, the underlying schedule of insurance is amended]

The schedule reads as follows:

*The Difference Between*

| Comprehensive General Liability including Products | Bodily Injury occurrence/ | $2,000,000 each $4,000,000 aggregate |
|---|---|---|

* * * *

with Curtis Bay Insurance Company & /or Self Insured which will apply for computation of losses into Self Insured $2,000.000/$4,000.000 subject to exclusion of $250,000 each and every loss.

*and Underlying Limits of*
[Aetna coverages] [9]

---

North River argues that the Endorsement means that monies paid by Curtis Bay is subject to the $250,000 deductible; that a Curtis Bay payment is the same as a self-insured retention. Hercules argues the opposite, that the language does not have that meaning that Curtis Bay is an underlying carrier, treated the same as

---

8. North River JU Policy 0306 at HPC 0007835–36.

9. North River Insurance Policy 0306 at NR 00275.

Aetna. The Limits of Liability language in 0306, 0833 and 1233 are the same. The language in the endorsements varies somewhat.

The first issue I encounter in resolving this matter is whether it is ripe for decision. Hercules argues that "the treatment of the Curtis Bay payments by the North River policy is not relevant when no such payments have been made." [10] North River apparently does not disagree. At oral argument, North River's counsel, Mr. Bhatia, responded to the Hercules argument by noting "[t]hey may not have made any payments ... we're entitled to take some discovery on that issue." [11] The affidavit of Michael F. Rettig makes this same point.[12]

As with the motions regarding exhaustion, the issue regarding the $250,00 deductible is not ripe for decision.

### Continental Joinder

It appears that the issues raised by Continental in its joinder with North River on the attachment points are addressed by this decision save for one. Continental argues that the North River policy, JU 0040 includes a schedule of underlying insurance which references the Aetna limits, but does not specifically mention Aetna. Its argument seems to suggest that there has been no discovery to demonstrate that the Aetna policy is the only source of underlying coverage which may be available. I find no merit to this argument. The affidavits of Mr. Rettig have created an adequate factual record. This case has been pending for over a year so opportunity for discovery has been adequate. Aetna was the primary carrier for Hercules for most of the twelve years at issue. Continental provided coverage over North River. Aetna provided coverage in the amounts referenced in the schedule. There is no genuine issue that the Aetna policy is the only applicable underlyer.

### Conclusion

On cross-motions for summary judgment, the motion of Hercules is DENIED, and the cross-motion of North River is GRANTED on the question of the $25,000 per occurrence deductible.

The issue related to the $250,000 deductible is not ripe, thus the cross-motions are denied without prejudice.

Continental's motion for summary judgment is DENIED as it relates to the issue of underlying scheduled insurance, and GRANTED to the extent that it incorporates the North River argument regarding the $25,000 per occurrence deductible.

IT IS SO ORDERED.

---

10. Pltf's Reply Brief at p. 14.

11. Transcript of Oral Argument, Dec. 2, 2003, at 42.

12. "It is my understanding that Curtis Bay has made no payments for the underlying asbestos claims." Aff. of Michael F. Rettig (Pltf.'s Reply Brief) ¶ 5.